1   John G. Kerkorian (012224)
    kerkorianj@ballardspahr.com
2   Michael DiGiacomo (032251)
    digiacomom@ballardspahr.com
3   BALLARD SPAHR LLP
    1 East Washington Street, Suite 2300
4   Phoenix, AZ 85004-2555
    Telephone:   602.798.5400
5   Facsimile:   602.798.5595

6   Marcos D. Sasso, *(Admitted Pro Hac Vice)*
    sassom@ballardspahr.com
7   BALLARD SPAHR LLP
    2029 Century Park East, Suite 800
8   Los Angeles, CA 90067-2909
    Telephone:   424.204.4324
9   Facsimile:   424.204.4350

10  *Attorneys for Defendant*
    *Citibank, N.A.*

11

12              IN THE UNITED STATES DISTRICT COURT

13               FOR THE DISTRICT OF ARIZONA

14  Christine Head, on behalf of herself and
    others similarly situated,              NO. CV-18-08189-DLR.
15
                                            **DEFENDANT'S MOTION TO STAY**
16            Plaintiff,                     **CASE PENDING THE SUPREME**
                                            **COURT'S RULING ON THE**
17       vs.                                **DEFINITION OF AN AUTOMATIC**
                                            **TELEPHONE DIALING SYSTEM**
18  Citigroup Incorporated,

19            Defendant.

20          Defendant Citibank, N.A. ("Citibank") hereby respectfully submits this Motion to

21  Stay.  The motion is supported by the following Memorandum of Points and Authorities.

22          **MEMORANDUM OF POINTS AND AUTHORITIES**

23  **I.      INTRODUCTION**

24          This case seeks certification of a putative class pertaining to claims for alleged

25  violations by Citibank of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et.*

26  *seq.* (the "TCPA") for calls made to cell phones using an automatic telephone dialing

27  system and an artificial or prerecorded voice message.  On July 9, 2020, the United States

28  Supreme Court granted certiorari to review the Ninth Circuit's interpretation of an

*(left margin, vertical text)* Ballard Spahr LLP / 1 East Washington Street, Suite 2300 / Phoenix, Arizona 85004-2555 / Telephone: 602.798.5400

"automatic telephone dialing system" ("ATDS") under the TCPA and to resolve the circuit split on what constitutes an ATDS under the TCPA.  *See Facebook, Inc. v. Duguid*, No. 19-511, 2020 U.S. LEXIS 3559, at *1 (July 9, 2020) ("*Duguid*").  Whether Citibank called Plaintiff and the putative class using an ATDS is a key issue in this case. The Supreme Court's decision will resolve, once and for all, the pronounced circuit split and potentially eliminate Plaintiff's individual and putative class claims for violation of the TCPA.  To promote judicial economy, ensure efficient discovery and fairness, and avoid needless expense to the parties, Citibank respectfully requests that this Court stay these proceedings pending the Supreme Court's forthcoming ruling in *Duguid*.  *See Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) (recognizing the district court's discretion to stay cases).

## II.  **BACKGROUND**

### A.  The Circuits Are Split over the Definition of an ATDS

The TCPA prohibits, among other things, the use of any "automatic telephone dialing system" to "make any call" to "any telephone number assigned to a * * * cellular telephone service." 47 U.S.C. 227(b)(1)(A)(iii).  The statute defines an ATDS as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1)(A).  Attempts by courts across the country to apply this definition have led to a sharp split of authority.

The Third, Seventh, and Eleventh Circuits hold that, consistent with the TCPA's plain language, equipment must either (1) store telephone numbers to be called using a random or sequential number generator, or (2) produce telephone numbers to be called using a random or sequential number generator.  *See Gadelhak v. AT&T Servs.*, Inc., 950 F.3d 458, 464, 469 (7th Cir. 2020); *Glasser v. Hilton Grand Vacations Co.*, 948 F.3d 1301, 1310 (11th Cir. 2020); *Dominguez v. Yahoo, Inc.*, 894 F.3d 116, 119-21 (3d Cir. 2018).  This interpretation is "the most natural one based on sentence construction and grammar." *Gadelhak*, 950 F.3d at 464 (citing *Glasser*, 948 F.3d at 1306).

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, Arizona 85004-2555
Telephone: 602.798.5400

The Ninth Circuit, on the other hand, holds that equipment is an ATDS simply if it has the capacity to "store numbers to be called" and "to dial such numbers automatically." *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1052-53 (9th Cir. 2018); *see also Duran v. La Boom Disco, Inc.*, 955 F.3d 279, 283-84 (2d Cir. 2020) (accord). Under this approach (which Citibank disputes), equipment purportedly need not call numbers derived from random- or sequential-number-generators to constitute an ATDS—it merely has to have the capacity to store numbers and then call them automatically. *See Duran*, 955 F.3d at 285; *Marks*, 904 F.3d at 1052. *Contra Glasser*, 948 F.3d at 1307 (declining to "read a key clause ('using a random or sequential number generator') out of the statute"). Thus, an iPhone qualifies as an ATDS in the Ninth Circuit because it can store numbers and automatically call or text them. *See Gadelhak*, 950 F.3d at 467 (discussing the iPhone example and noting such an ATDS interpretation would be "an outlier within the statutory scheme if it were to capture such a wide swath of everyday conduct").[1]

The Circuits' competing ATDS definitions lead to inconsistent rulings in TCPA cases, which are only exacerbated in a class action like the instant case.[2]

## B. The Supreme Court's Review of *Duguid*

In *Duguid*, Facebook, Inc. challenges the Ninth Circuit's divergent definition of an ATDS. Facebook, Inc. has requested—and the Supreme Court has granted—certiorari on the following issue:

> Whether the definition of ATDS in the TCPA encompasses any device that can "store" and "automatically dial" telephone numbers, even if the device does not "us[e] a random or sequential number generator."

[1] The D.C. Circuit has likewise recognized that using a broad definition that would "render every smartphone an ATDS subject to the [TCPA's] restrictions" would be "an unreasonable, and impermissible, interpretation of the statute's reach." *ACA Int'l v. FCC*, 885 F.3d 687, 697-98 (D.C. Cir. 2018).

[2] A defendant may have no liability for TCPA if a plaintiff brings her claim in the Third, Seventh, or Eleventh Circuits, but be liable if the plaintiff brings the exact same claim in the Ninth or Second Circuits. Class claims only exacerbate the problem—for example, plaintiffs in the Third, Seventh, or Eleventh Circuits who would not be entitled to relief if they brought their own case could end up recovering damages as members of a nationwide class in the Ninth or Second Circuits.

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, Arizona 85004-2555
Telephone: 602.798.5400

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, Arizona 85004-2555
Telephone: 602.798.5400

Pet'n for Writ of Certiorari, *Duguid*, No. 19-511 (Oct. 17, 2019); *see also Duguid*, 2020 U.S. LEXIS 3559, at *1.  The Supreme Court is now poised to resolve the growing circuit split and determine the meaning of an ATDS in the October 2020 term.

### C. Plaintiff's Claims Against Citibank

Plaintiff purports to bring a class action grounded in allegations that Citibank called her and putative class members using an ATDS.  *See* Second Amended Class Action Complaint ("SAC") ¶¶ 84-85 [ECF 68].  Plaintiff alleges that Citibank placed calls to her cellular telephone number using an "ATDS" or automated telephone dialing system [*id.* at ¶ 34] for non-emergency purposes [*id.* at ¶ 40] and that she never provided her telephone number to Citibank [*id.* at ¶ 28] or had any relationship with Citibank [*id* at ¶ 26].  Plaintiff alleges actual harm as a result of the alleged phone calls.  *Id.* at ¶ 48.  Based on these facts, Plaintiff asserts claims against Citibank for violating the TCPA.  *Id.* at ¶¶ 94-97.

On July 8, 2020, Plaintiff filed a Motion for Class Certification (ECF No. 84).  On behalf of herself and others similarly situated, Plaintiff seeks to represent the following nationwide class:

> All persons and entities throughout the United States (1) to whom Citibank, N.A. placed a call in connection with a past-due credit card account, (2) directed to a number assigned to a cellular telephone service, but not assigned to a current or former Citibank, N.A. customer or authorized user, (3) via its Aspect dialer or with an artificial or prerecorded voice, (4) from August 15, 2014 through the date of class certification.

ECF No. 84 at 1.  In support of class certification, Plaintiff argues that the "Aspect dialing system can automatically dial telephone numbers from a stored list" (*id.* at 3), and "whether Citibank placed the calls at issue by using an automatic telephone dialing system ('ATDS') is a common question" (*id.* at 8).  Plaintiff argues that whether the "Aspect dialer, as Citibank used it, is an ATDS is a question that results in an answer common to all class members."  (*Id.*)  As such, Plaintiff seeks to certify the putative class and seeks damages, treble damages, injunctive relief, and attorneys' fees for Citibank's alleged violation of 47 U.S.C. § 227(b)(1)(A)(iii).  (SAC ¶ 98).  Quite simply, the

Supreme Court's ruling on the ATDS definition will decide how, if at all, the TCPA claims can proceed in this case.

## III.    THE COURT SHOULD STAY THIS CASE PENDING THE SUPREME COURT'S DECISION IN *DUGUID*

A district court has discretion to stay an action based on its inherent power to control its docket. *Landis*, 299 U.S. at 254.  In determining whether to exercise its discretion to stay a case as permitted by *Landis*, a district court should weigh "the competing interests which will be affected by the granting or refusal to grant a stay," including "[1] possible damage which may result from the granting of a stay, [2] the hardship or inequity which a party may suffer in being required to go forward, and [3] the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Lockyer v. Mirant Corp*., 398 F.3d 1098, 1110 (9th Cir. 2005) (citation omitted).

As set forth below, these interests favor a stay pending the Supreme Court's resolution of the ATDS definition, a central—and potentially dispositive—issue in this case. *See, e.g.*, *In re Sprouts Farmers Mkt.*, No. MDL 16-02731-PHX-DLR, 2017 U.S. Dist. LEXIS 80323, *4 (D. Ariz. May 24, 2017) (staying case after the Supreme Court granted certiorari regarding an issue that "would greatly influence" the plaintiff's claim); *Flores-Angeles v. United States*, No. CV-16-02067-PHX-SRB (BSB) 2017 U.S. Dist LEXIS 19263 (D. Ariz. February 10, 2017) (staying case after the Supreme Court granted certiorari because "the controlling decisions by the Supreme Court . . . will narrow the issues and promote judicial economy"); *Whittaker v. All Reverse Mortg., Inc.*, No. CV-20-08016, 2020 U.S. Dist. LEXIS 96833 (D. Ariz. 2020) (staying case after the Supreme Court granted certiorari regarding an issue that "might limit the scope of discovery").

Again, resolution of the key issue presented in *Duguid* will have a direct impact on this case.  As one court recognized in granting a stay, because "appellate courts have been unable to agree on the exact definition to give to an 'autodialer' that lies at the heart of the TCPA's prohibitive mandates," a stay pending "clarity from the Supreme Court" as

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, Arizona 85004-2555
Telephone: 602.798.5400

to "definitional problem" raised in *Duguid* is necessary and warranted. *See Seefeldt v. Entm't Consulting Int'l*, No. 19-188, 2020 U.S. Dist. LEXIS 31815, at *9 (E.D. Mo. Feb. 25, 2020) (granting stay pending outcome in *Duguid*). As in *Seefeldt*, a stay under the *Landis* factors is warranted here.

### A.     A Stay Would Cause Minimal, if Any, Damage

Plaintiff will not be prejudiced by a short stay of these proceedings. For one, delay in obtaining money damages does not constitute sufficient prejudice for purposes of the stay analysis. *See CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962) (finding no irreparable damage from a stay where plaintiff requested monetary relief). Plaintiff is no longer receiving calls; thus, she seeks only monetary relief for herself. This is not the type of damage that can preclude a stay. *See Whittaker*, 2020 U.S. Dist. LEXIS 96833. Moreover, a stay "will not necessarily lengthen the life of this case" because "a delay would also result from new briefing [or new, costly discovery] that may be necessitated" by the Supreme Court's ruling in *Duguid*. *Desert Shores Cmty. Ass'n*, No. 2:17-cv-01696-APG-NJK, 2017 U.S. Dist. LEXIS 95408, at *4.

Nor will a stay prejudice the claims of putative class members. Last year, the United States District Court for the Northern District of California in *Revitch v. Citibank, N.A.*, No. C 17-06907-WHA, 2019 U.S. Dist. LEXIS 72026, *12-15 (C.D. Cal. April 28, 2019), denied certification as to a putative class nearly identical to the class that Plaintiff purports to certify here. Indeed, in previously assessing whether to stay the instant case pending certification in the *Revitch* case, this Court "agree[d] that Plaintiff seeks to certify classes that are materially identical to the putative class in the earlier-filed [*Revitch*] action." *See* ECF 40.

In *Revitch*, the court denied certification, in part, because resolving the issue of consent as to putative class members requires individualized inquiries. *See Revitch*, 2019 U.S. Dist. LEXIS 72026, *12-15; *see also Hunter v. Time Warner Cable Inc.*, No. 15-CV-6445 (JPO), 2019 U.S. Dist. LEXIS 137495, at *45 (S.D.N.Y. Aug. 14, 2019); *Wilson v. Badcock Home Furniture*, No. 8:17-cv-02739, 2018 U.S. Dist. LEXIS 213792,

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, Arizona 85004-2555
Telephone: 602.798.5400

at *12 (M.D. Fla. Dec. 19, 2018).   The Northern District of Illinois in *Tomeo v. Citigroup, Inc.*, No. 13 C 4046, 2018 U.S. Dist. LEXIS 166117, *15 (N.D. Ill. Sep. 27, 2018), reached a similar conclusion with respect to claims against an affiliate of Citibank as to a class that was also substantively identical to the putative class that Plaintiff purports to seek to certify in the instant case.   *See Tomeo*, 2018 U.S. Dist. LEXIS 166117 at *15.   As such, waiting for the Supreme Court to provide much needed guidance on the issue of what constitutes an ATDS will not prejudice putative class members because the issue of class certification has been tested and denied twice in the last two years.

Finally, the stay has a finite period that is likely short.   The Supreme Court "usually issues its decision within three months of oral argument; only the very rare case bounces around the chambers for more than six months, and almost every decision is issued in the same term in which the case is argued."   *The Best for Last: The Timing of U.S. Supreme Court Decisions*, 64 Duke L.J. 991, 993 (Mar. 2015).   We can thus expect a decision before the Court recesses in late June/early July 2021—potentially sooner depending on the date of oral argument.   *See id*.

**B.      Citibank Would Suffer Significant Hardship Without a Stay**

Courts routinely find that litigation expense and uncertainty satisfy the "hardship or inequity" factor necessary to justify a stay.   *See, e.g.*, *Romero v. Securus Techs*., 383 F. Supp. 3d 1069, 1075 (S.D. Cal. 2019) (("the prospect of substantial, unrecoverable time and resources spent on class discovery weighs in [movant's] favor" for a stay); *Gallion v. Charter Communs., Inc*., 287 F. Supp. 3d 920, 933 (C.D. Cal. 2018) ("the burden of proceeding with this litigation potentially unnecessarily" is a factor that favors a stay); *Robinson v. Nationstar Mortg.*, 220 F. Supp. 3d 1353, 1355 (S.D. Ga. 2016) ("the hardship to Defendant and considerations of judicial economy outweigh the possible prejudice caused by the delay").

Absent a stay, Citibank will be forced to continue to defend against Plaintiff's attempt to certify the same putative class that has already been denied class certification. Citibank will thus be forced to continue to incur costs pertaining to briefing class

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, Arizona 85004-2555
Telephone: 602.798.5400

certification and completing expert discovery, as well as potentially incurring unnecessary motion and trial preparation costs, all while the Supreme Court determines what devices qualify as an ATDS. Conversely, as discussed, there is no prejudice or impact to Plaintiff or the putative class, as the theory of class certification has already been tested and denied in prior cases. *Seefeldt*, 2020 U.S. Dist. LEXIS 31815, at *11-12 (holding that "a stay is appropriate . . . to avoid exhausting judicial resources to decide things like defendant's multifaceted motion to dismiss, plaintiff's pending motion for class certification, and any possible discovery-related matters or summary judgment motions"); *see also Romero v. Securus Techs.*, 383 F. Supp. 3d at 1069. Such expenses and uncertainties are present here, where the Supreme Court will soon decide the constitutionality of the precise statutory provision forming the basis for Plaintiff's claims in this action.

Accordingly, this factor also favors a stay.

### C.    A Stay Will Simplify Issues and Promote Judicial Economy

Granting a stay here is in the public interest because it will simplify the issues and promote judicial economy. "[A] trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case." *Mediterranean Enters., Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1465 (9th Cir. 1983) (internal quotation marks omitted); *see also Readick v. Avis Budget Grp. Inc.*, 12 CIV. 3988, 2014 WL 1683799, 2014 U.S. Dist. LEXIS 58784, at *15 (S.D.N.Y. Apr. 28, 2014) ("[C]onsiderations of judicial economy . . . weigh against the investment of court resources that may prove to have been unnecessary." (internal quotations omitted)). Indeed, a stay also may benefit a plaintiff, who would "be spared the expense of pursuing doomed claims." *RB Prods. v. Ryze Capital, LLC*, No. 3:19-cv-00105-MMD-WGC, 2019 WL 1429526, 2019 U.S. Dist. LEXIS 191576, at *7 (D. Nev. Nov. 4, 2019).

There can be no more important reason to stay a federal action than the potential resolution of a controlling issue of law by the United States Supreme Court in another

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, Arizona 85004-2555
Telephone: 602.798.5400

case. *See Daimler-Benz Aktiengesellschaft v. U.S. Dist. Court of the W. Dist. of Okla.*, 805 F.2d 340, 341-42 (10th Cir. 1986) (staying appellate proceedings because the Supreme Court granted a petition for writ of certiorari on the same issue in another action); *Canady v. United States*, No. 16-336, 2016 U.S. Dist. LEXIS 103627, at *1-2 (D. Utah Aug. 5, 2016) (staying case pending Supreme Court decision in another proceeding).

As explained by the Eastern District of California just weeks ago in granting a stay pending a disposition of the then-pending certiorari petition in *Facebook*:

> Waiting for the Supreme Court's decision in … *Duguid*, will allow this Court to adjudicate the issues before it with far greater certainty. To do otherwise would be a waste of judicial resources and a waste of the parties' time and energy. For this reason, a stay awaiting clarity on the validity of the TCPA in general, and the definition of an ATDS more specifically, would allow for a more orderly disposition of this motion.

*Hoffman v. Jelly Belly Candy Co*., No. 19-1935, 2020 U.S. Dist. LEXIS 112663, at *6 (E.D. Cal. June 26, 2020). Allowing the Supreme Court to rule on the definition of an ATDS in *Duguid* will not merely promote judicial economy by providing a clear precedent on a critical element of this case—it could dispose of Plaintiff's and the putative class's TCPA claims in their entirety. Accordingly, this *Lockyer* factor also favors a stay.

## IV.   CONCLUSION

As set forth herein, all of the stay factors strongly support a stay in this case pending a disposition by the Supreme Court in *Duguid*. Accordingly, Citibank respectfully requests that this Court stay this case until the Supreme Court rules on the Ninth Circuit's definition of an ATDS in *Duguid*.

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, Arizona 85004-2555
Telephone: 602.798.5400

RESPECTFULLY SUBMITTED this 27th day of July, 2019.

BALLARD SPAHR LLP

By: */s/ Michael A. DiGiacomo*
    John G. Kerkorian
    Michael DiGiacomo
    1 East Washington Street, Suite 2300
    Phoenix, AZ 85004-2555
    *Attorneys for Defendant*
    *Citibank, N.A.*

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, Arizona 85004-2555
Telephone: 602.798.5400

**CERTIFICATE OF SERVICE**

I certify that on this 27th day of July, 2020, I electronically transmitted a PDF version of this document to the Office of the Clerk of the Court, using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all CM/ECF registrants listed for this matter.

*/s/ Vicki Morgan*

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, Arizona 85004-2555
Telephone: 602.798.5400