UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

- - - - - - - - - - - - - - - - - - - - - - - -

Christine Head, on behalf of

herself and others similarly situated,

      Plaintiffs,


vs.                      C.A. No.:   3:18-CV-08189-DLR


Citibank, N.A.,

      Defendant.

- - - - - - - - - - - - - - - - - - - - - - - -

C O N F I D E N T I A L


DEPOSITION OF MARGARET A. DALEY


Monday, September 14, 2020

Commencing at 10:26 a.m.


Taken via Zoom Video Communications


Job #32185

Christine M. Ferraro

Court Reporter and Notary Public



EcoScribe Solutions
www.EcoScribeSolutions.com
888.651.0505

```
 1                UNITED STATES DISTRICT COURT
 2                 FOR THE DISTRICT OF ARIZONA
 3   - - - - - - - - - - - - - - - - - - - - - -
 4   Christine Head, on behalf of
 5   herself and others similarly situated,
 6           Plaintiffs,
 7
 8   vs.                          C.A. No.:  3:18-CV-08189-DLR
 9
10   Citibank, N.A.,
11           Defendant.
12   - - - - - - - - - - - - - - - - - - - - - -
13                  C O N F I D E N T I A L
14
15            DEPOSITION OF MARGARET A. DALEY
16
17              Monday, September 14, 2020
18                Commencing at 10:26 a.m.
19
20          Taken via Zoom Video Communications
21
22   Job #32185
23                   Christine M. Ferraro
24            Court Reporter and Notary Public
```

| | |
|---|---|
| 1 | **APPEARANCES OF COUNSEL:** |
| 2 | |
| 3 | On behalf of the Plaintiff: |
| 4 |     Greenwald, Davidson, Radbil, PLLC |
| 5 |     By:  Michael L. Greenwald, Esq. |
| 6 |     5550 Glades Road, #500 |
| 7 |     Boca Raton, FL 33431 |
| 8 |     (561)826-5477 |
| 9 |     MGreenwald@gdrlawfirm.com |
| 10 | |
| 11 | |
| 12 | On behalf of the Defendant: |
| 13 |     Ballard Spahr, LLP |
| 14 |     By:  Daniel JT McKenna, Esq. |
| 15 |     1735 Market Street, 51st Floor |
| 16 |     Philadelphia, PA 19103-7599 |
| 17 |     (215)864-8321 |
| 18 |     McKennaD@BallardSpahr.com |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |

```
 1         affidavits, I would need to go back and look at
 2         my particular files.  So, I'd be speculating
 3         right now.
 4    Q.   Have you ever worked for a class action notice
 5         and administration company?
 6    A.   No.
 7    Q.   Have you ever provided an analysis of the breach
 8         that a class action notice claim would provide?
 9    A.   No.
10    Q.   Have you ever examined the effectiveness of
11         publication notice in a class action?
12    A.   No.
13    Q.   Have you ever analyzed the effectiveness of
14         on-line advertisements in a class action?
15    A.   No.
16    Q.   Have you ever analyzed the effect of a press
17         release in a class action with respect to
18         notice?
19              MR. McKENNA:  Objection to form.
20    A.   No.
21    Q.   So with respect to your report on paragraph 12,
22         so paragraph 12 on page 9, I believe, gets to
23         the point that you were making about work you
24         have done in connection with TCPA settlements.
```

```
 1           wheel, what are you referring to?
 2     A.    Putting up a website, advertising that website
 3           so that people can register.  It wasn't a
 4           wrong-number case, but in the Charvot case that
 5           website had the database linked to it so you
 6           could put your telephone number in and see if
 7           you had received a call.  I know that there are
 8           certain types of publications that they may put
 9           ads on different types of websites one would
10           expect that might be driven by a desire to reach
11           the people that were actually class members, so
12           there may be some demographic information that
13           might play into what websites the ads are placed
14           on.
15                 So, you know, and then there's notice
16           that's provided, mailers, et cetera.  Those are
17           the spokes.  But I would expect that they're
18           going to be a little different in every case,
19           and the specifics on any particular case I
20           worked on, I'm not aware of.
21     Q.    Have you ever been retained to offer an opinion
22           as to whether class notice in a particular case
23           can be provided in a manner consistent with Rule
24           23 and due process?
```

1   A.   No.
2   Q.   And are you offering an opinion in this case as
3        to whether if a class is certified notice can be
4        provided in a manner consistent with Rule 23 and
5        due process?
6                 MR. McKENNA:  Objection to form.
7   A.   No.
8   Q.   Have you ever personally submitted any comments
9        to the FCC?
10  A.   No.
11  Q.   Have you made a submission of any kind to the
12       FCC?
13  A.   No.
14  Q.   Sticking with your report, on page 4 and
15       paragraph number 2.  The first sentence of
16       paragraph 2 is, "Neither Plaintiff nor
17       Plaintiff's expert identify a single person that
18       satisfies the class definition."  Do you see
19       that?
20  A.   Yes.
21  Q.   Does the Plaintiff, Christine Head, meet the
22       class definition?
23  A.   Well, what I'm talking about --
24  Q.   And just so we're --

```
 1           is more than a 50 percent chance that it's wrong
 2           because the LexisNexis data and the PacificEast
 3           data and all the reverse lookup data is
 4           inaccurate.  It's highly inaccurate.  It's a
 5           crap shoot.
 6    Q.     Do you believe that class members who receive
 7           publication notice can identify themselves?
 8                    MR. McKENNA:  Objection to form.
 9    A.     That's outside the scope of my work.  That's not
10           my area.
11    Q.     Okay.  So you're not offering an opinion in this
12           case as to whether a class member can identify
13           themselves; is that right?
14    A.     No.  That's not part of my work.
15    Q.     We have talked about the reverse lookups aspect
16           of Ms. Peak's methodology.  Did you test any of
17           the other methodologies for providing class
18           notice that she proposed, such as setting up a
19           website?
20    A.     No.
21    Q.     Did you test any methodology Ms. Peak proposed
22           with respect to print publication notice?
23    A.     No.  That's outside the scope of my work.  My
24           report makes it clear that issues of publication
```

| | | |
|---|---|---|
| 1 | | documented? |
| 2 | A. | I don't have an opinion on that. |
| 3 | Q. | I'm going to direct you to paragraphs 111 to 133 |
| 4 | | of your report. |
| 5 | A. | Yes. |
| 6 | Q. | And due to obviously confidentiality, I'm not |
| 7 | | going to reference any particular names, but my |
| 8 | | question is, for the names that you write about |
| 9 | | in your report in paragraphs 111 to 133, did you |
| 10 | | speak with any of those persons? |
| 11 | A. | No. |
| 12 | Q. | Did you make any effort to speak with any of the |
| 13 | | persons you identify in paragraphs 111 to 133? |
| 14 | A. | No. |
| 15 | Q. | In paragraph 122 -- I'll let you read paragraph |
| 16 | | 122 and then let me know when you're ready to |
| 17 | | talk about it. |
| 18 | A. | Yes. |
| 19 | Q. | In the second to last sentence you reference |
| 20 | | that calls to this 1377 number, you believe, |
| 21 | | were indicated by family members of the |
| 22 | | accountholder and thus consent to calling the |
| 23 | | telephone number likely existed. |
| 24 | A. | Yes. |

```
 1            you answered it.  If you did, I apologize.
 2    A.      Well, I'm sorry if I misunderstood you.
 3    Q.      No, no problem.  Does Citibank have records of
 4            all outbound calls it placed through an aspect
 5            dialer for the proposed class period?
 6                    MR. McKENNA:  Objection to form.  You
 7            can answer.
 8    A.      I don't recall how far back it is.  I'm sure you
 9            have the records and I would refer back.  I
10            would want to look at the dialer records, the
11            beginning date.  That wasn't a question I was
12            asked to confirm, but I know it's been produced
13            to you.
14    Q.      You said my hypothetical is outside the scope of
15            your opinion and I just want to make clear, so
16            are you offering any opinion as to the process,
17            if any, that Citibank could employ to either
18            verify or contest a claim made by a class member
19            that that person is a member of the class, or is
20            that outside the scope --
21    A.      My expert report contains my opinions and I made
22            it very clear that I am not opining on
23            notification process, publicizing, putting
24            things up on Facebook.  That is not -- that
```

```
 1              notice process is not part of my opinion.
 2                        MR. GREENWALD:  Okay.  Let's take five
 3              minutes.  I just want to make sure I'm not
 4              missing anything, and then we can wrap up.  Is
 5              that good with everyone?
 6                        THE WITNESS:  Okay.  Great.
 7                        (Brief recess.)
 8   BY MR. GREENWALD:
 9       Q.     Ms. Daley, other than what's in your expert
10              report, which is Exhibit 3, have you been asked
11              to provide any other expert opinions in this
12              case?
13       A.     No.
14                        MR. GREENWALD:  I have no other
15              questions.
16   MR. McKENNA:  Mike, I think I have a
17   couple, if that's okay.  And I guess I will
18   figure out how to turn my video back on for
19   that.
20                        THE WITNESS:  Hi, Dan.
21                        MR. McKENNA:  How are you?  I just
22              have a few questions, if that's okay.
23
24   EXAMINATION BY MR. McKENNA:
```

```
 1                      CERTIFICATE

 2   COMMONWEALTH OF MASSACHUSETTS

 3   Middlesex, ss.

 4

 5        I, Christine M. Ferraro, Court Reporter and Notary

 6   Public in and for the Commonwealth of Massachusetts, do

 7   hereby certify that on Monday, September 14, 2020,

 8   Margaret A. Daley, whose deposition is hereinbefore set

 9   forth, was duly sworn by me and that such deposition is a

10   true record of the testimony given by the witness.

11        I further certify that I am neither related to or

12   employed by any of the parties in or counsel to this

13   action, nor am I financially interested in this action.

14        In witness whereof, I have hereunto set my hand and

15   affixed my seal on this 20th day of September, 2020.

16

17                      [signature: Christine M. Ferraro]

18                      Christine M. Ferraro

19                      NOTARY PUBLIC

20                      My Commission Expires:

21                      January 7, 2022

22

23

24
```