UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

File No. 3:18-CV-08189-ROS

CHRISTINE HEAD, on behalf     )
of herself and others         )
similarly situated,           )
                              )
    Plaintiff,                )
                              )
vs.                           )
                              )
CITIBANK, N.A.,               )
                              )
    Defendant.                )
_____)

VIDEOCONFERENCE DEPOSITION OF:

MARGARET DALEY

Appearing Remotely from Chicago, Illinois

Tuesday, July 13, 2021

10:00 a.m. - 11:02 a.m.

Job #33515

---Reporter:  Tina Sarcia-Maxwell, RPR, CRR

EcoScribe Solutions
www.EcoScribeSolutions.com
888.651.0505



```
                UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF ARIZONA


                              File No. 3:18-CV-08189-ROS


   CHRISTINE HEAD, on behalf  )
   of herself and others      )
   similarly situated,        )
                              )
         Plaintiff,            )
                              )
   vs.                        )
                              )
   CITIBANK, N.A.,            )
                              )
         Defendant.           )
   _____)




             VIDEOCONFERENCE DEPOSITION OF:

                    MARGARET DALEY

       Appearing Remotely from Chicago, Illinois

                Tuesday, July 13, 2021

                10:00 a.m. - 11:02 a.m.







   Job #33515


         ---Reporter:  Tina Sarcia-Maxwell, RPR, CRR
```

```
 1              A P P E A R A N C E S
            (Remotely via Zoom videoconference)
 2

 3   ON BEHALF OF PLAINTIFF:

 4   Michael L. Greenwald, Esquire
     Greenwald Davidson Radbil PLLC
 5   7601 N. Federal Highway, Suite A-230
     Boca Raton, Florida 33487
 6   (561) 826-5477
     Mgreenwald@gdrlawfirm.com
 7

 8   ON BEHALF OF THE DEFENDANT:

 9   Matthew Morr, Esquire
     Ballard Spahr LLP
10   1 East Washington Street, Suite 2300
     Phoenix, Arizona 85004-2555
11   Morrm@ballardspahr.com

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1       about the methodology proposed by the
2       plaintiff that would presuppose what sort of
3       notice was being given, and I've identified
4       many problems with that notification.
5              So to the extent the question is
6       asking me whether or not the current
7       notifications methodology is reasonable and
8       practicable, I would refer you to my report.
9   Q.  Okay.  Let me -- let's take that piece by
10      piece.  You previously testified that you
11      were not offering an opinion on the
12      publication press release or website
13      components of Ms. Peak for a proposed notice
14      plan; is that still the case?
15  A.  Yes.
16  Q.  So you're opinions or criticisms of Ms. Peak,
17      are they limited to the direct mail portion
18      of her proposed notice plan?
19             MR. MORR:  Object to form.
20  A.  Well, I have to go back again and refer you
21      to my report which I think speaks for itself.
22  Q.  Okay.  Let's do it this way then:  Are you
23      offering an opinion on whether and how
24      potential class members could learn about
25      this case through publication notice?

```
 1   A.   And what can -- can you define "publication
 2        notice" for me?  Are you assuming that's --
 3        there's a lot to that and that's also a legal
 4        term, so I'm not sure we're on the same page
 5        in terms of what you're asking me, and I'd
 6        like to answer the question, but I need to
 7        understand it.
 8   Q.   That's fair.  Let's define "publication
 9        notice" as the placement of an advertisement
10        in an newspaper or a magazine.
11   A.   Okay.  With that definition, can you ask me
12        the question again?
13   Q.   Are you offering an opinion on whether and
14        how potential class members can learn of this
15        case through publication notice?
16             MR. MORR:  Object to form.  Go
17        ahead.
18   A.   Based on the very previous definition that
19        you just provided me, my answer would be no,
20        I am not offering such an opinion.
21   Q.   So the record is clear, for everyone's
22        benefit, are you offering an opinion on
23        whether and how potential class members can
24        learn of this case through a notice published
25        in a newspaper or magazine?
```

```
 1   A.   No, I am not.
 2   Q.   Are you offering an opinion in this case as
 3        to how class members can learn about this
 4        case through a press release?
 5   A.   No.
 6             MR. MORR:  Object to form.
 7   Q.   Are you offering an opinion in this case on
 8        whether and how potential class members could
 9        learn about this case through a dedicated
10        website?
11   A.   No.
12             MR. MORR:  Object to form.
13   Q.   And are you offering an opinion on whether
14        and how class members can learn about this
15        case through online advertising?
16             MR. MORR:  Object to form.
17   A.   No.
18             MR. GREENWALD:  Well, if the court
19        reporter can mark virtually as Exhibit 1 the
20        renewed declaration of Margaret A. Daley, and
21        it is dated June 18, 2021.  It is 17 pages.
22             MR. MORR:  Hey, Mike, I'm sorry.
23        I'm also new to the game.  Have you been
24        doing consecutive numbering on the deposition
25        exhibits or are you just starting at 1 with
```

1     phone number because the business records
2     themselves do not identify those telephone
3     numbers as having been called without
4     consent.  There is no indicia there was a
5     lack of consent or indicia of consent within
6     the business records.
7               Again, it is a very long report, and
8     there's a number of -- there is an order of
9     operation that is based on your expert's
10    methodology.  So what I'm saying there the
11    methodology that I tried to replicate that
12    your expert has identified does not give to
13    you at the end a list of phone numbers to
14    which you can identify bona fide class
15    members.
16 Q. Okay.  Would you agree that a phone number
17    can't meet the class definition?
18 A. That's a legal decision.  That is outside the
19    scope.  I would leave it up to the judge what
20    determines a class definition.
21 Q. Okay.  So your read of the class definition
22    included in paragraph 5, you don't have an
23    opinion as to whether a phone number can be a
24    class member?
25 A. I'm not opining about that.  What actually

```
 1        constitutes a bona fide class member is
 2        outside the scope of my work.  I understand
 3        that your expert says it has to be a person.
 4        I do understand that, but I'm not going to
 5        testify here about what is or is not a bona
 6        fide class member legally with a legal
 7        definition of anything; that is outside the
 8        scope of my work.
 9   Q.   But, on the other hand, you're saying 201
10        phone numbers were not found to meet the
11        class definition.  You are opining as to what
12        did not meet the class definition?
13              MR. MORR:  Object to form.
14   A.   Is that a question?
15   Q.   That is a question.  Are you saying that
16        despite your sentence at the end of paragraph
17        16, you are not opining as to telephone
18        numbers that meet the class definition?
19              MR. MORR:  Object to form.
20   A.   Your class expert predicates her notice plan
21        or her -- whatever she wants to call it, her
22        plan, on first identifying telephone numbers
23        through which she will then identify
24        individuals, so what that sentence says is I
25        could not find any telephone numbers that
```

1  Q.  Do you know who or what people were the
2      subscribers or customary users of those 24
3      records that came back as no-appends?
4          MR. MORR:  Object to form.
5  A.  Do I have personal knowledge as who picks up
6      that telephone number at any particular point
7      in time, is that your question?
8  Q.  Do you have any information at all as to the
9      users of those 24 telephone numbers that came
10     back as no-appends are?
11         MR. MORR:  Object to form.
12 A.  Personally, no.  I don't know anybody who
13     actually knows who picks up a phone call who
14     uses a telephone number at any particular
15     date and time.  There is no data, as far as I
16     know, as to who answers the telephone call.
17 Q.  And I think -- I know the answer because you
18     testified nothing has changed your initial
19     analysis, but just so the record is complete,
20     did you call any of these 201 telephone
21     numbers?
22 A.  No.
23 Q.  Did you send text messages to the 201
24     telephone numbers?
25 A.  No.

```
 1              If you have a different definition
 2         of a subscriber, then I'm happy to hear it
 3         and answer the question.
 4   Q.    No, I like your definition.  Did you contact
 5         any wireless carriers to try to locate
 6         information on who the subscribers to those
 7         201 telephone numbers are?
 8   A.    No.
 9   Q.    Did you issue any subpoenas with respect to
10         those 201 telephone numbers?
11              MR. MORR:  Object to form.
12   A.    I don't have the ability to issue subpoenas.
13         The answer is no.
14   Q.    Are you -- you're a licensed attorney, right?
15   A.    Yes, I am.  The last time I checked I an
16         individual licensed attorney.  I can't just
17         throw a subpoena out to somebody.
18   Q.    Did you initiate any kind of publication
19         notice in this case?
20   A.    No.
21   Q.    Did you set up a website in this case?
22   A.    No.
23   Q.    Did you take any steps to encourage people
24         who could be associated with those 201
25         telephone numbers to identify themselves to
```

```
 1        you?
 2   A.   No.
 3             MR. GREENWALD:  Let's take
 4        10 minutes, and I don't think I have much
 5        else, but I just want to verify.  Does that
 6        work for everybody?
 7             MR. MORR:  Sure.  Let's come back at
 8        10:00 your time, Peggy.
 9             (Recess)
10   BY MR. GREENWALD:
11   Q.   Ms. Daley, in paragraph 27 through 42 you
12        reference a number of different telephone
13        numbers and then Citibank's records
14        associated with those numbers; is that a fair
15        and general statement?
16   A.   Yes.
17   Q.   Did you speak with any of the people that you
18        mentioned by name in paragraphs 27 through
19        42?
20   A.   No.
21   Q.   Did you make any effort to speak with any of
22        the people that you reference in paragraphs
23        27 through 42?
24   A.   No.
25             MR. GREENWALD:  Okay.  I have
```

REPORTER'S CERTIFICATE

I, Tina Sarcia-Maxwell, a Notary Public in and for the State of North Carolina, do hereby certify that there came before me on Tuesday, July 13, 2021, the person hereinbefore named, who was by me duly sworn to testify to the truth and nothing but the truth of their knowledge concerning the matters in controversy in this cause; that the witness was thereupon examined under oath, the examination reduced to typewriting under my direction, and the transcript is a true record of the testimony given by the witness.

I further certify that I am neither attorney nor counsel for, nor related to nor employed by any attorney or counsel employed by the parties hereto or financially interested in the action.

IN WITNESS WHEREOF, I have hereto set my hand, this 15th day of July, 2021.

*[signature: Tina Sarcia]*

_____

Tina Sarcia-Maxwell, Notary Public