**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Christine Head, | No. CV-18-08189-PCT-ROS |
|         Plaintiff, | **ORDER** |
| v. | |
| Citibank, N.A., | |
|         Defendant. | |

Plaintiff Christine Head seeks to certify a class of persons and entities within the United States who received a call with an artificial or prerecorded voice from Citibank, N.A. in connection with a past-due credit card account even though the person or entity is not a Citibank customer. (Doc. 120 at 2). Head claims that Citibank's practice of using robocalls to non-customers violates the 47 U.S.C. § 227, the Telephone Consumer Protection Act ("TCPA"). (Doc. 120 at 2). Citibank argues class certification is inappropriate because individualized determinations would be required to establish whether each person who received a Citibank robocall may properly be considered a class member. (Doc. 134 at 19).

Head's motion for class certification (Doc. 120) will be granted in part. A class will be certified and Head will be named class representative.

On October 4, 2021, the Court granted Citibank leave to file supplemental briefing responding to Head's use of a recent case, *Wesley v. Snap Finance LLC*, 339 F.R.D. 277 (D. Utah 2021), in her reply (Doc. 138) to Citibank's opposition (Doc. 134) to her motion

for class certification.  (Doc. 140).  Citibank's supplemental briefing contains a motion to exclude the testimony of Head's expert, Carla Peak, who was also an expert in *Wesley*.[1] (Doc. 145 at 10).  Citibank's motion to exclude Peak's expert opinion (Doc. 145) will be denied.

## BACKGROUND

Plaintiff Christine Head is a resident of Arizona who is not now, and never has been, a customer of Citibank.  (Doc. 118 at 4).  Nevertheless, Citibank placed more than 100 robocalls to Head's cellphone number, (928) XXX-0023, between October and December 2017 regarding overdue credit account of a man named Jack Bingham.  (Doc. 118 at 3-4). Head does not know Bingham and did not authorize him or anyone else to open a Citibank account using her cellphone number.  (Doc. 118 at 4).

Head brought this action against Citibank seeking damages for Citibank's alleged violations of the TCPA.  (Doc. 118).  Head argues "Citibank routinely violates 47 U.S.C. § 227(b)(1)(A)(iii) by placing calls using an artificial or prerecorded voice to telephone numbers assigned to a cellular telephone service, without prior express consent."[2]  (Doc. 118 at 2).

Presently before the Court is Head's motion to certify a class of persons who received unsolicited robocalls from Citibank.  (Doc. 120).  Head proposes the following class definition:

> All persons and entities throughout the United States (1) to whom Citibank, N.A. placed a call in connection with a past-due credit card account, (2) directed to a number assigned to a cellular telephone service, but not assigned to a current or former Citibank, N.A. customer or authorized user, (3) via its Aspect dialer and with an artificial or prerecorded voice, (4) from August 15, 2014 through the date of class certification.

---

[1] Citibank requested oral argument regarding its motion to exclude Peak's opinion.  (Doc. 145).  The Court finds oral argument is unnecessary and will resolve Citibank's motion on the filings.  *See* LRCiv. 7.2(f).

[2] The TCPA prohibits "any person . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial prerecorded voice . . . to any telephone number assigned to a" cellular telephone service.  *See* 47 U.S.C. § 227(b).  The TCPA creates a private right of action for statutory damages in the amount of $500 per violation (or more, if the defendant violated this subsection willfully or knowingly).  § 227(b)(3).

1  (Doc. 120 at 2).

2  **LEGAL STANDARD**

3  "The class action is 'an exception to the usual rule that litigation is conducted by

4  and on behalf of the individual named parties only.'" *Wal-Mart Stores, Inc. v. Dukes*, 564

5  U.S. 338, 349 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979)).

6  "[P]laintiffs wishing to proceed through a class action must actually prove—not simply

7  plead—that their proposed class satisfies each requirement of Rule 23." *Halliburton Co.

8  v. Erica P. John Fund, Inc.*, 573 U.S. 258, 275 (2014) (emphasis omitted).  The Court must

9  rigorously analyze the facts of a putative class action to ensure that the prerequisites set

10  forth in Rule 23 are satisfied.  *Wal-Mart*, 564 U.S. at 350-51.

11  **ANALYSIS**

12  **I.     Class Certification**

13  A member of a class may sue as a representative party if the member satisfies

14  Federal Rule of Civil Procedure 23(a)'s four prerequisites: numerosity, commonality,

15  typicality, and adequacy of representation.  Fed. R. Civ. P. 23(a); *Mazza v. Am. Honda

16  Motor Co., Inc.*, 666 F.3d 581, 588 (9th Cir. 2012).  If Rule 23(a) is satisfied, a putative

17  class representative must also show that the class falls into one of three categories under

18  Rule 23(b).  Fed. R. Civ. P. 23(b).  For a Rule 23(b)(3) class, which Head seeks to certify

19  here, a plaintiff must make two further showings.  First, a plaintiff must show that questions

20  of law or fact common to class members predominate over any questions affecting only

21  individual class members.  *Id.*  Second, a plaintiff must demonstrate class action is superior

22  to other available methods for adjudicating the controversy.  *Id.*

23  **1.   Numerosity**

24  A proposed class satisfies the numerosity requirement if class members are so

25  numerous that joinder of all members would be impracticable.  Fed. R. Civ. P. 23(a)(1).

26  "The numerosity requirement is not tied to any fixed numerical threshold—it 'requires

27  examination of the specific facts of each case and imposes no absolute limitations.'"

28  *Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010) (quoting *Gen. Tel. Co. of the*

*Nw., Inc. v. EEOC*, 446 U.S. 318, 330 (1980)).  "In general, courts find the numerosity requirement satisfied when a class includes at least 40 members."  *Id.*  Judges within this district have repeatedly recognized that numerosity may be satisfied "when general knowledge and common sense indicate that joinder would be impracticable," even where it is not possible to estimate a specific number of class members.  *See Knapper v. Cox Commc'ns, Inc.*, 329 F.R.D. 238, 241 (D. Ariz. 2019) (citing *Horton v. USAA Cas. Ins. Co.*, 266 F.R.D. 360, 365 (D. Ariz. 2009)); *Torres v. Goddard*, 314 F.R.D. 644, 654-55 (D. Ariz. 2010) (citation omitted); *Valenzuela v. Ducey*, No. CV-16-03072, 2017 WL 6033737, at *5 (D. Ariz. Dec. 6, 2017).

Head estimates there are more than one million class members.  (Doc. 118 at 6).  This estimate is based on the practical conclusion that Citibank allegedly places 2.5 billion calls per year regarding overdue credit balances, and a certain proportion of those must be wrong numbers, like Head's.  (Doc. 120 at 8).  Head further notes that an analysis of Citibank's records from November 2017 to December 2019 identified nearly five million telephone numbers designated as potentially wrong numbers, or numbers Citibank would cease calling.  (Doc. 120 at 6).

Citibank argues Head has failed to establish numerosity because Head has not identified any other class members.  (Doc. 134 at 3-4) ("Numerosity can only be established by identifying a group of such people.").  Citibank also notes that many of the phone numbers denoted "wrong number," "no consent," or "cease-and-desist" in its records may, in fact, be correct numbers or numbers Citibank has authorization to call.  (Doc. 134 at 5, 19).

The Court is satisfied that the putative class members are sufficiently numerous to make joinder impracticable.  Citibank does not deny that it places billions of calls each year regarding delinquent accounts, or that millions of accounts in its system are marked "wrong number."  Although Citibank claims it does not call accounts marked "wrong number," its method for identifying wrong numbers[3] indicates that at least one unsolicited

---

[3] Citibank says, "agents mark a number 'wrong' if the call is disconnected, the person hangs up, or the accountholder falsely says ,'wrong number.'"  (Doc. 134 at 5).

call must be placed to the number before it is marked "wrong." (Doc. 134 at 5, 12). At least some of the persons associated with wrong numbers therefore have claims under the TCPA due to the call(s) placed to them that led to the "wrong number" denotation on their account. Moreover, given that Citibank does not dispute it called Head repeatedly before it marked the account associated with her number "cease-and-desist," it is a clear inference that there may be numbers not yet marked "wrong," "no consent," or "cease-and-desist" for which Citibank does not have authorization to robocall. Further cementing the Court's finding of numerosity is the rate of telephone number reassignment: 100,000 numbers are reassigned by wireless carriers every day. (Doc. 120 at 5). In light of the enormous rate at which Citibank places calls to delinquent accounts, it seems virtually impossible that Citibank has not robocalled at least 40 different persons whom Citibank did not have authorization to call.

In sum, the Court is confident based on general knowledge and common sense that joinder would be impracticable. *See Knapper*, 329 F.R.D. at 241 ("[N]umerosity is met when general knowledge and common sense indicate that joinder would be impracticable.") (citation omitted). As the District of Utah recently held in the context of an analogous circumstance in *Wesley*, a plaintiff "is not required to identify any other class member at the class certification stage." *Wesley*, 339 F.R.D. at 293.

## 2. Commonality

A proposed class satisfies Rule 23's commonality requirement if there is at least one question of fact or law common to the class. Fed. R. Civ. P. 23(a)(2). The claims must "depend upon a common contention such that determination of its truth or falsity will resolve an issue that is central to the validity of each claim in one stroke." *Knapper*, 329 F.R.D. at 242 (quoting *Mazza*, 666 F.3d at 588). The Supreme Court has said the word "question" in Rule 23(a)(2) is a misnomer: "What matters to class certification . . . is not the raising of common 'questions'—even in droves—but rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart*, 564 U.S. at 350 (quoting Richard A. Nagareda, *Class Certification in the Age*

*of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (2009)).

Head argues there exist three common questions[4]: "First, whether Citibank utilized a prerecorded voice in connection with its calls to class members . . .  Second, that each class member suffered the same injury and is entitled to the same statutorily mandated relief . . .  Finally, . . . whether callers are liable for calls placed to wrong or reassigned numbers."  (Doc. 120 at 9-10).  Each of these is generally a different way to express the same question: Did Citibank call someone whom they were not authorized to call, and play a prerecorded voice during that call, in violation of the TCPA?

In *Knapper*, Judge Steven P. Logan of this Court addressed a substantially similar commonality issue in the context of the TCPA.  He identified four common questions. First, "[w]hether Defendant used an ATDS [automatic telephone dial system] or an artificial or prerecorded voice to allegedly call the putative class members would produce an answer that is 'central to the validity of each claim in one stroke.'" *Knapper*, 329 F.R.D. at 242 (quoting *Mazza*, 666 F.3d at 588).  Second, "whether liability attaches for wrong or reassigned numbers" is a common question, Judge Logan held, "even if what triggers liability for wrong or reassigned numbers were to change."  *Id.*  Third, "whether consent was or was not given is a common question."  *Id.*  Finally, "all putative class members allegedly suffered the same injury—a receipt of at least one phone call by Defendant in violation of the TCPA.  Thus, whether each class member suffered the same injury is also

---

[4] Citibank devotes a substantial proportion of its opposition (Doc. 134) arguing that class treatment is inappropriate in this matter because "individualized analyses must be performed to evaluate each putative class member's individual claim."  (Doc. 134 at 3). Citibank's expert conducted an analysis that attempts to demonstrate the method by which class members are identified is time consuming and difficult.  (Doc. 134 at 5-7).  Citibank explains that a number may be marked "wrong" even if it is not wrong, some placed calls do not result in a prerecorded or artificial message being played, and Citibank may have received valid consent to call a number based on someone else on the telephone account who did not ultimately receive the call.  (Doc. 134 at 4-7, 17-18).  This could be perceived as an argument regarding commonality, typicality, or predominance of common questions. Citibank does not indicate in its filings which of those categories its argument is intended to fall into.

Consistent with other courts to consider this issue, the Court holds Citibank's arguments "about individualized issues of consent and whether a prerecorded message 'actually played' are more appropriately aimed at the predominance element under Rule 23(b)(3)."  *Wesley*, 339 F.R.D. at 291 (citing *Sliwa v. Bright House Networks, LLC*, 333 F.R.D. 255, 274 n.18 (M.D. Fla. 2019)).   The Court will accordingly address Citibank's arguments in the context of that inquiry.  *See infra* Part I.5.

a 'common contention.'" *Id.* (quoting *Mazza*, 666 F.3d at 588).  All of these questions are applicable to the class Head seeks to certify.  Commonality is therefore satisfied.

### 3.  Typicality

A proposed class representative's claims and defenses must also be typical of the class.  Fed. R. Civ. P. 23(a)(3).  The Supreme Court has recognized that the "commonality and typicality requirements of Rule 23(a) tend to merge." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982).  The Ninth Circuit has described typicality as a "permissive standard[]." *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)).  "Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014). "[R]epresentative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Staton*, 327 F.3d at 957 (quoting *Hanlon*, 150 F.3d at 1020).

Head argues her claims are typical of the class because Head and the unnamed class members "were each harmed in the same way by Citibank's common practice of placing calls with a prerecorded voice to cellular telephone numbers that did not belong to Citibank accountholders." (Doc. 120 at 11).

Citibank argues Head has failed to demonstrate typicality because Head has not identified other class members against whom her claims can be compared.  (Doc. 134 at 20).  Citibank attempts to substantiate this point by demonstrating that identification of class members will require individualized analysis.  (Doc. 134 at 9-11).

The Court holds Head has made an adequate showing of typicality.  The claims (under 47 U.S.C. § 227) and defenses (such as consent) relevant to Head's claim are very likely to be typical across the class.  Indeed, every class member will have the same claim under § 227, and every class member could potentially be subject to a consent defense. Thus, not only are Head's claims and defenses typical of the class, they are largely identical.

Citibank has failed to identify a case indicating that classes may not be certified unless more than one class member is identified.  In light of that failing, and the Court's experience to the contrary, Head has satisfied typicality even though she has not yet identified another class member.  *Cf., e.g.*, *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1133 (9th Cir. 2017) (holding Rule 23 does not require a party to identify other class members as a prerequisite to certification); *Wesley*, 2021 WL 4291275, at *9 ("Wesley is not required to identify any other class members at the class certification stage.").

### 4. Adequacy of representation

The final prerequisite under Rule 23(a) requires that the Court must be satisfied that the representative party will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a)(4).  This overlaps in practice with the requirement under Rule 23(g) that class counsel must adequately represent the interests of the class.  Fed. R. Civ. P. 23(g).  The Court is persuaded that both Head and the proposed class counsel will fairly and adequately protect the interests of the class.

The inquiry under Rule 23(a)(4) asks two questions: "(1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *Staton*, 327 F.3d at 957 (citations omitted).  The Court is not aware of any conflicts of interest that affect Head or her counsel, attorneys from the law firms Meyer Wilson Co., LPA and Greenwald Davidson Radbil PLLC.  No party has raised a conflict, and the Court has not discovered one.  Moreover, the quality of Plaintiff's filings to this point, as well as the declarations submitted by the proposed class counsel, Michael Greenwald (Doc. 120-6) and Matthew Wilson (Doc. 120-7), persuade the Court that Head, Greenwald, and Wilson will continue to vigorously prosecute this action on behalf of the class.

Rule 23(g) sets forth a more protracted inquiry than 23(a)(4).  "In appointing class counsel, the court . . . must consider":

> (i)    the work counsel has done in identifying or investigating potential claims in the action;

(ii)      counsel's experiencing in handling class actions, other complex litigation, and the types of claims asserted in the action;

(iii)    counsel's knowledge of the applicable law; and

(iv)    the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A). The Court also "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

Class counsel have already done considerable work in identifying and researching the claims, hiring an expert witness, performing written discovery, taking depositions, and submitting filings to the Court. *See* (Doc. 120-6 at 7). Class counsel have also advanced all litigation costs, and say they will continue to do so. (Doc. 120-7 at 8). Significantly, class counsel have provided a list of well over a dozen class actions Greenwald, Wilson, and their respective firms have each litigated, including several under the TCPA. (Doc. 120-6 at 5-6; Doc. 120-7 at 2-7). These showings demonstrate counsel's experience in handling class actions, complex litigation, and the types of claims asserted in this action. *See* Fed. R. Civ. P. 23(g)(1)(A)(ii). Counsel's filings thus far evince an understanding of the law of class actions, Rule 23, and the TCPA.

### 5. Predominance of common questions

A plaintiff may bring a class action under Rule 23(b)(3) only where questions of law or fact common to the class predominate over questions affecting only individual members. Fed. R. Civ. P. 23(b)(3). "[T]he presence of commonality alone is not sufficient to fulfill Rule 23(b)(3)." *Hanlon*, 150 F.3d at 1022. If proof of liability would involve transaction-by-transaction analysis, then individual issues predominate. *See Ruiz Torres v. Mercer Canyons, Inc.*, 835 F.3d 1125, 1134 (9th Cir. 2016). On the other hand, if liability can be determined at a class-wide basis, common issues predominate. *Id.* This is true even if, at the damages stage, there remain "non-injured" class members and individualized damages calculations are required. *Id.* at 1136; *see also Knapper*, 329

1    F.R.D. at 243.

2         Citibank argues common questions of fact[5] do not predominate because

3    individualized determinations must be made to determine whether Citibank had consent to

4    call a putative class member, and whether a prerecorded message actually played (rather

5    than being attempted).   (Doc. 134 at 21-25).   Citibank also argues that arbitration

6    agreements signed by accountholders could defeat Rule 23(b)(3).  (Doc. 134 at 25).

7         Head argues that issues of consent do not defeat the class because class members,

8    by definition, are non-customers of Citibank who did not consent to being robocalled (Doc.

9    120 at 12), and also would therefore not be subject to an arbitration agreement.  (Doc. 138

10   at 7-10).  Head distinguishes two cases propounded by Citibank in which the Court denied

11   class certification, *Revitch v. Citibank*, 2019 WL 1903247 (N.D. Cal. Apr. 28, 2019) and

12   *Tomeo v. Citigroup, Inc.*, 2018 WL 4627386 (N.D. Ill. Sept. 27, 2018), by noting that

13   unlike in those cases, the proposed class in this matter is defined objectively, not by

14   reference to Citibank's own records.  (Doc. 138 at 5).  Class members in this matter would

15   be identified by whether or not they are Citibank customers, rather than whether Citibank

16   has marked their account "wrong number."  (Doc. 138 at 6).  Head also points to several

17   cases in which a court certified a similar TCPA, even though some persons who were

18   marked "wrong number" and who receive notice may not be class members.  (Doc. 138 at

19   6). *See, e.g.*, *Knapper*, 329 F.R.D. at 244; *Wesley*, 2021 4291275, at *15; *Lavigne v. First

20   Cmty. Bancshares, Inc.*, 2018 WL 2694457, at *8 (D.N.M. June 5, 2018); *Johnson v.

21   Navient Solutions, Inc.*, 315 F.R.D. 501, 503 (S.D. Ind. 2016); *Abdeljalil v. Gen. Elec.

22   Capital Corp.*, 306 F.R.D. 303 (S.D. Cal. 2015); *West v. California Servs. Bureau, Inc.*,

23   323 F.R.D. 295, 302 (N.D. Cal. 2017).

24        Common questions of law and fact predominate.   The law applicable to each

25   putative class member is identical.  The facts are too, with one important exception—some

26   persons who otherwise would be class members may have consented to receive Citibank

27

28   _____
     [5] Citibank raises only the argument that common questions of fact do not predominate.
     (Doc. 134 at 21).  It does not argue common questions of law do not predominate.

robocalls.[6]  The Court is persuaded based on Head's arguments and past caselaw that issues of consent can be overcome.   For example, in *Knapper*, this Court found a TCPA "Defendant's reliance on its evidence of consent is misplaced." *Knapper*, 329 F.R.D. at 244.  The Court explained issues of consent, or lack of consent, could be overcome on a class-wide basis through the use of a reverse lookup service in conjunction with: "(1) subpoenaing wireless carriers to obtain additional name and address information for the cellular telephone numbers at issue; (2) checking the addresses against the National Change of Address database; (3) publicizing notice; (4) issuing a press release; (5) setting up a notice website; and (6) requiring claims forms, self-identifying affidavits, and supporting documentation." *Id.* at 244-45 (internal quotation marks omitted).  Head has suggested most of the same mechanics and has enlisted the help of a class action notice expert, who explains notice is feasible and offers a proposed system of notification that is consistent with the notification held adequate in *Knapper*.  (Doc. 120 at 16-17; Doc. 120-8 at 6-9). Because the Court is persuaded that adequate notice can overcome individualized factual concerns with consent, the Court will join the other courts that "have certified TCPA cases despite the possibility that a substantial proportion of the phone numbers marked as 'wrong number' in Defendant's call records may not have actually been a wrong number."[7] *Knapper*, 329 F.R.D. at 244 (citing *Johnson*, 315 F.R.D. at 503; *Abdeljalil*, 306 F.R.D. 303; *West*, 323 F.R.D. at 302).

Ultimately, the basic questions in this case are the same for all class members: Did Citibank call a putative class member without authorization? And, did a prerecorded or artificial voice play during the call?  If the answer to both questions is yes—and all evidence indicates that it will be yes for many putative class members—recovery is appropriate.  Precedent, such as *Knapper* and *Wesley*, demonstrates these questions can be litigated as a class.

---

[6] Contrary to Citibank's suggestion, arbitration agreements signed by Citibank customers do not preclude class treatment because the class is only composed of non-customers.

[7] The Court notes, however, that if it is demonstrated down the road that individualized determinations of consent are likely to remain an insuperable problem despite tailored notice and self-identification methods, decertification may be appropriate.

### 6. Superiority of class treatment

The final determination a court must make to certify a Rule 23(b)(3) class is that class action would be superior to individual actions in fairly and efficiently resolving the claims presented in this matter. Rule 23 enumerates four factors pertinent to determining whether class action is the superior method of litigation. First, "the class members' interests in individually controlling the prosecution or defense of separate actions." Fed. R. Civ. P. 23(b)(3)(A). Second, "the extent and nature of any litigation concerning the controversy already begun by or against class members." Fed. R. Civ. P. 23(b)(3)(B). Third, "the desirability or undesirability of concentrating the litigation of the claims in the particular forum." Fed. R. Civ. P. 23(b)(3)(C). Finally, "the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(D). "Where class wide litigation will reduce litigation costs and promote greater efficiency, a class action may be the superior method of litigation." *Knapper*, 329 F.R.D. at 246 (citing *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996)).

Head argues class treatment is the superior method because the relatively small amount of recovery available under the TCPA means that, "absent a class action, tens of thousands of claims like Ms. Head's[]will go un-redressed." (Doc. 120 at 14). Head also argues class litigation is superior because "the claims of the proposed class are identical, they arise from the same standardized conduct, and they result in uniform damages calculated on a per-violation level." (Doc. 120 at 14). Head notes that several courts have considered factors such as these in making a finding of superiority of class litigation. (Doc. 120 at 13-14). *See, e.g.*, *Knapper*, 329 F.R.D. at 247 ("Should individual putative class members choose to file claims on their own, given the potential class size and the relatively small amount of statutory damages for each case, individual litigation would not promote efficiency or reduce litigation costs. This is particularly so for claims that all stem from the same cause of action and involve common issues."); *Lavigne*, 2018 WL 2694457, at *8 ("[T]he complex nature of this TCPA action lends itself to the efficiencies of class certification. It would [be] inefficient to reinvent [the] wheel on approximately 30,000

separate cases."); *Siding & Insulation Co. v. Beachwood Hair Clinic, Inc.*, 279 F.R.D. 442, 446 (N.D. Ohio 2012) ("Under the TCPA, each individual plaintiff is unlikely to recover more than a small amount (the greater of actual monetary loss or $500).  Individuals are therefore unlikely to bring suit against [defendant], which makes a class action the superior mechanism for adjudicating this dispute.") (citations and quotation marks omitted).

Citibank argues class action is not superior to individual litigation because Head's reliance on Citibank records "demonstrates that individualized 'issues would require a series of mini-trials, thus defeating predominance and superiority.'"  (Doc. 134 at 26) (quoting *Alpha Tech Pet, Inc. v. Lagasse, LLC*, 2017 WL 5069946, at *22 (N.D. Ill. Nov. 3, 2017)).

Class action is the superior method of litigating the claims in this matter.  In the absence of a class action, thousands of meritorious claims would likely go unredressed because the cost of litigation would dwarf any possible reward under the TCPA.  *See* 47 U.S.C. § 227(b)(3)(B) (providing that a §227(b) plaintiff may bring "an action to recover for actual monetary loss for such a violation, or to receive $500 in damages for each such violation").  Moreover, if each plaintiff did bring their individual TCPA claim, it would impede judicial efficiency by requiring the courts to "reinvent [the] wheel," *Lavigne*, 2018 WL 2694457, at *8, in largely identical actions brought by many, many similarly situated plaintiffs.  Class litigation will therefore facilitate the possibility of recovery for Citibank's alleged statutory violations, and will enhance efficiency.  Finally, as explained above, the Court is persuaded that individualized issues of consent can be overcome without resort to a series of minitrials.  *See supra* Part I.5.

### 7.  Scope of the class

This Order grants Head's motion for class certification and certifies the class Head proposes:

> All persons and entities throughout the United States (1) to whom Citibank, N.A. placed a call in connection with a past-due credit card account, (2) directed to a number assigned to a cellular telephone service, but not assigned to a current or former Citibank, N.A. customer or authorized user, (3) via its Aspect dialer and with an artificial or prerecorded voice, (4) from August 15, 2014 through the date of class certification.

(Doc. 120 at 2).

However, the Court's review of the record has generated a concern regarding this definition that was not raised by the parties.  In November 2017, Citibank altered the way that it maintains indicator codes in its databases.  (Doc. 134 at 4).  Citibank claims that this makes it more difficult to determine when and how phone indicator codes changed on accounts prior to November 2017.  (Doc. 134 at 4).  The parties' filings do not make clear how the change in Citibank's records may impact the ability to identify class members, or whether calls prior to November 2017 would require additional proof or evidence.

Because it appears that Citibank records prior to November 2017 contain all the same information as Citibank records today, except that changes in indicator codes are harder to identify, the Court finds the class can be certified as proposed.  But if, down the road, the records prior to November 2017 require greater individualized inquiries, the Court may consider amending the class definition to include only persons who received unauthorized Citibank robocalls beginning November or December 2017, rather than August 15, 2014.  *See Wesley*, 339 F.R.D. at 290 (limiting the class definition to contain persons called after September 1, 2019 because defendant changed its call log notation practices on September 1, 2019); *see also Ruiz Torres*, 835 F.3d at 1139 ("[T]he district court may elect to separate the class into subclasses, or adjust the scope of the class definition, if it later finds that the inclusiveness of the class exceeds the limits of [the defendant's] legal liability."); Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment.").

## II.   Motion to Exclude Expert Testimony

A significant portion of Citibank's response to Head's motion for class certification is devoted to attacking the reliability of Head's notice expert, Carla Peak.  (Doc. 134 at 12-17).  Citibank argues Peak's opinion should be stricken because Citibank claims that Head seeks to use Peak's opinion to establish the requirements of Rule 23.  (Doc. 134 at 12).  Head argues Citibank mischaracterizes the purpose of Peak's opinion.  (Doc. 138 at 11).  Head insists that Peak's opinion is provided for the purpose of establishing the adequacy

of notice required to be distributed to potential Rule 23(b)(3) class members, not to establish the elements of Rule 23.  (Doc. 138 at 11-12).  Head writes: "To be clear, Ms. Peak was not retained to identify *bona fide* class members at the class certification stage . . .  Rather, Ms. Peak opines that notice can be adequately provided to potential class members in a manageable way." (Doc. 138 at 11-12).

On October 4, 2021, the Court granted Citibank leave to submit supplemental briefing in response to Head's use of the recently-decided *Wesley* case in Head's reply to Citibank's response to Head's motion for class certification.  (Doc. 141).  Citibank's supplemental briefing recapitulates Citibank's objection to Peak's testimony, and objects that Head seeks to use Peak's opinion to find Rule 23 satisfied.  (Doc. 145 at 9).  Citibank claims that the district court in *Wesley* erred by relying on a notice plan created by Peak to find Rule 23's requirements satisfied.[8]  (Doc. 145 at 9).

The legal standard for admissibility of expert opinion is set forth in Federal Rule of Evidence 702.  *See also Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993); *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999).  The Rule 702 *Daubert/Kumho Tire* standard is applicable to expert opinions provided at class certification.  *See Wal-Mart*, 564 U.S. at 354; *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1006 (9th Cir. 2018).  Rule 702 provides that an expert witness may testify if:

> (a) the expert's . . . specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  In other words, the Court must determine that the expert opinion is relevant and reliable.  *See Daubert*, 509 U.S. at 589.

---

[8] When the defendant in *Wesley* sought to exclude Peak's testimony, the district court found the plaintiff obtained Peak's expert opinion for the purpose of establishing sufficiency of notice, not of Rule 23's other requirements.  *See Wesley*, 2021 WL 4291275, at *3.

Carla Peak has specialized knowledge regarding class action notice that assists the Court in determining that the notice required to certify a Rule 23(b)(3) class is feasible. *See* Fed. R. Civ. P. 23(c)(2)(B).  Peak is Vice President of Legal Notifications Services for KCC, LLC.  (Doc. 120-8).  Peak's declaration describes KCC as "a firm that specializes in class action services, including legal notification." (Doc. 120-8).  The declaration explains that Peak and KCC have ample experience in class action notification, and that KCC has administered notice plans in dozens of TCPA cases.  (Doc. 120-8 at 2-4).  Peak claims more than 15 years of experience in the class action notification field.  (Doc. 120-8 at 5). The Court considers Peak's experience more than adequate for her to serve as a notice expert, especially given the complex and technical nature of notice for large plaintiff classes under Rule 23(b)(3).  Head does not submit Peak's opinion for the purpose of establishing that Rule 23(a) or (b)'s elements have been satisfied and, most importantly, the Court did not consider Peak's opinion for that purpose in conducting its Rule 23 analysis above.  The *Wesley* court similarly found Peak "qualified to provide testimony concerning a notice plan." *Wesley*, 2021 WL 4291275, at *3.

Peak's testimony is based on sufficient facts.  The notice system she proposes is consistent with notice KCC has implemented in the past.  (Doc. 120-8 at 6).  Moreover, it appears that Peak's four-page-long proposed notification process has been tailored to the circumstances of this case and is sufficiently resilient to withstand possible informational deficiencies in Citibank's records.  (Doc. 120-8 at 6-9).

Peak's testimony is the product of reliable principles and methods, and it appears that Peak applies those principles reliably in the context of this case.  Peak's declaration demonstrates that the notification method Head intends to employ in this matter have been used in dozens of cases, including many cases under the TCPA.  (Doc. 120-8 at 2-4, 6-9). Moreover, the multi-step notification process overlaps significantly with the notice process held to be adequate in *Knapper*.  *Compare Knapper*, 329 F.R.D. at 244-45 *with* (Doc. 120-8 at 6-9).  Although Citibank argues that the "reverse look-up" is unreliable (Doc. 134 at 15), the Court is persuaded by the reasoning of cases such as *Knapper* that the unreliability

of the look-up services can be ameliorated through the sort of cross-checking Peak describes in the proposed notification procedure.  Moreover, the Court notes that the notice need not perfectly identify bona fide class members; it need only be "the best notice that is practicable under the circumstances."  Fed. R. Civ. P. 23(c)(2)(B).  The notice procedure Peak describes appears to be the best practicable notice—one that has worked in previous cases and should reasonably identify putative class members.

Thus, the Court holds Head has adequately demonstrated the reliability and relevance of Peak's expert opinion regarding notice to possible Rule 23(b)(3) class members.  The Court has not, and will not, rely on Peak's testimony to establish the sufficiency of any factor under Rule 23(a) or (b).

## CONCLUSION

The Court finds Plaintiff has met the four Rule 23(a) requirements and has shown the proposed class should be certified pursuant to Rule 23(b)(3).  Plaintiff's Renewed Motion for Class Certification and Appointment of Class Counsel (Doc. 120) will be granted.  Conversely, Defendant's Motion to Exclude the Testimony of Carla Peak (Doc. 145) will be denied because Plaintiff has demonstrated Peak's opinion is relevant and reliable.

Accordingly,

**IT IS ORDERED** Plaintiff's Renewed Motion for Class Certification and Appointment of Class Counsel (Doc. 120) is **GRANTED**.  Pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3), the Court certifies the class as: All persons and entities throughout the United States (1) to whom Citibank, N.A. placed a call in connection with a past-due credit card account, (2) directed to a number assigned to a cellular telephone service, but not assigned to a current or former Citibank, N.A. customer or authorized user, (3) via its Aspect dialer and with an artificial or prerecorded voice, (4) from August 15, 2014 through the date of class certification.

**IT IS FURTHER ORDERED** the Court appoints the law firms of Meyer Wilson Co., LPA and Greenwald Davidson Radbil PLLC as class counsel pursuant to Federal Rule

of Civil Procedure 23(g).

**IT IS FURTHER ORDERED** Defendant's Supplemental Brief on Plaintiff's Motion for Class Certification and Defendant's Motion to Exclude the Testimony of Carla Peak (Doc. 145) is **DENIED** to the extent that it seeks to exclude the testimony of Plaintiff's expert, Carla Peak, on the subject of notice procedures pursuant to Federal Rule of Civil Procedure 23(c).

Dated this 27th day of January, 2022.

Honorable Roslyn O. Silver
Senior United States District Judge

- 18 -