1  Michael L. Greenwald (*admitted pro hac vice*)
2  Aaron D. Radbil (*admitted pro hac vice*)
   Greenwald Davidson Radbil PLLC
3  5550 Glades Road, Suite 500
4  Boca Raton, Florida 33431
   (561) 826-5477
5  mgreenwald@gdrlawfirm.com
6  aradbil@gdrlawfirm.com

7  Matthew R. Wilson (*admitted pro hac vice*)
   Michael J. Boyle, Jr. (*admitted pro hac vice*)
8  Meyer Wilson Co., LPA
9  305 W. Nationwide Blvd.
   Columbus, Ohio 43215
10 (614) 224-6000
11 (614) 224-6066 (Fax)
   mwilson@meyerwilson.com
12 mboyle@meyerwilson.com

13
   Class Counsel
14

15                   UNITED STATES DISTRICT COURT
                      FOR THE DISTRICT OF ARIZONA
16

17 Christine Head, *on behalf of herself*          )
   *and others similarly situated*,                )   No.: 3:18-cv-08189-ROS
18                                                 )
19                Plaintiff,                       )
                                                   )   **PLAINTIFFS' UNOPPOSED**
20         v.                                      )   **MOTION FOR PRELIMINARY**
                                                   )   **APPROVAL OF CLASS ACTION**
21 Citibank, N.A.,                                 )   **SETTLEMENT**
22                                                 )
                                                   )
23                Defendant.                       )
   _____         )
24
25
26
27
28

# Introduction

After nearly six years of vigorously contested litigation, and as a result of extensive arm's-length, good-faith negotiations overseen by the Hon. Steven M. Gold (Ret.) of JAMS, Christine Head, Robert Newton (collectively, "Plaintiffs"), and Citibank, N.A. ("Citibank"), reached an agreement to resolve this class action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.[1] Plaintiffs now seek preliminary approval of the parties' class action settlement agreement ("Agreement").[2]

The settlement requires Citibank to pay $29.5 million into a non-reversionary common fund from which participating Settlement Class Members will receive payments. Citibank will fund the settlement within 28 days of preliminary approval by this Court, after which the fund will accrue interest in FDIC-insured accounts for the benefit of Settlement Class Members, assuring an even greater amount will be available when it is ready for distribution.

The settlement constitutes an outstanding result for Settlement Class Members in this TCPA case involving calls to wrong or reassigned cellular telephone numbers. Plaintiffs and Class Counsel respectfully submit that the settlement is fair, reasonable, adequate, and in the best interests of the Settlement Class. This is especially so in light of the substantial risks and uncertainties of protracted litigation and the fact that participating Settlement Class Members stand to receive meaningful cash payments (Plaintiffs estimate $350-$850 each) as a result.

---

[1] Mr. Newton, who is represented by these same Class Counsel, filed suit against Citibank on April 11, 2022, asserting identical claims under the TCPA to those asserted by Ms. Head. No. 1:22-cv-89-KAC-CHS (E.D. Tenn.). Mr. Newton's proposed class period began the day after the certified class period here ended. As part of the settlement at bar, and with the consent of Citibank, Mr. Newton has dismissed his claims in the Eastern District of Tennessee without prejudice so that this Court may oversee the overall class settlement.

[2] The Agreement and its exhibits are appended to the Declaration of Michael L. Greenwald, which is attached as Exhibit A. Capitalized terms in this motion have the same meanings as in the Agreement.

1

Accordingly, Plaintiffs respectfully request that this Court enter the accompanying agreed order granting preliminary approval of the settlement.

Citibank does not oppose this relief.

## Summary of the Class Settlement

**I.  Plaintiffs allege that Citibank violated the TCPA by delivering prerecorded messages to wrong or reassigned cellular telephone numbers. Citibank denies it violated the TCPA.**

Congress enacted the TCPA in 1991 to address privacy and harassment concerns arising from certain calling practices that escaped state invasion of privacy and nuisance statutes by operating interstate. *Mims v. Arrow Fin. Servs. LLC*, 132 S. Ct. 740, 745 (2012).[3] To that end, "[t]he TCPA prohibits persons from (1) making 'any call,' (2) 'using any automatic telephone dialing system or an artificial or prerecorded voice,' (3) 'to any telephone number assigned to a . . . cellular telephone service. . . .'" *Grant v. Capital Mgmt. Servs., L.P.*, 449 F. App'x 598, 600 (9th Cir. 2011).

The claims at issue here are relatively straightforward: Citibank placed calls, in connection with which it used a prerecorded voice, to Plaintiffs' cellular telephone numbers, even though neither plaintiff was a Citibank customer or an authorized user of a Citibank account. Citibank made these calls while attempting to reach its own customers regarding past-due credit card bills. Citibank called Plaintiffs because its customers provided Plaintiffs' cellular telephone numbers as contact numbers. At issue is whether these claims, and those of similarly situated consumers, violate the TCPA. Citibank maintains that it did not violate the TCPA, that it was entitled to rely on consent that its customers provided, that others could have provided valid consent on Plaintiffs' behalf, and that, regardless, class certification (other than for settlement purposes) is improper.

---

[3]  Emphasis is added, and internal quotations and citations are omitted, unless otherwise noted.

2

A caller has a complete defense to a TCPA claim if it can demonstrate that it made calls with the prior express consent of the called party. *See Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1044 (9th Cir. 2017).[4]

## II. Despite facing significant obstacles to proving liability and maintaining class certification, Plaintiffs' substantial litigation efforts resulted in the $29.5 million settlement now before this Court.

Plaintiffs strongly believe in their claims. On the other hand, Citibank vehemently disputes that it violated the TCPA. Citibank has raised a host of defenses, both on the merits and to class certification. For example:

- While this Court certified this matter as a class action, *see* Doc. 148, Citibank vowed to seek decertification of the class. In support, Citibank pointed to prior decisions denying certification of proposed TCPA classes against it. *See Revitch v. Citibank, N.A.*, No. C 17-06907 WHA, 2019 WL 1903247 (N.D. Cal. Apr. 28, 2019); *Tomeo v. CitiGroup, Inc.*, No. 13 C 4046, 2018 WL 4627386 (N.D. Ill. Sept. 27, 2018);

- Citibank intended to move for summary judgment, asserting, among other things, that it could reasonably rely on consent to call provided by its customers and that class members must individually demonstrate receipt of prerecorded voice messages. If this Court accepted Citibank's position, Plaintiffs' claims—and those of Settlement Class Members—would fail;

- Citibank further contended that non-customers could and do consent to receiving robocalls and that for those persons, issues of prior express consent would defeat their claims, *see* Docs. 204, 207;

- Citibank maintains that the number of class members is relatively small, for a host of reasons, *see id.*, and that any TCPA violations are infrequent and inadvertent; and

- Citibank contended that it maintains robust safeguards to ensure compliance with the TCPA. While Citibank vehemently disputes any liability, to the extent any violations did occur, Citibank argued that any violation of the TCPA was unintentional and would not support increased statutory damages.

Against this backdrop, and after extensive fact discovery, expert discovery, and motion practice, the parties first attended mediation on July 17, 2023, before experienced

---

[4] The TCPA also exempts from liability calls "made for emergency purposes[.]" 47 U.S.C. § 227(b)(1)(A). However, this defense is not at issue here.

3

mediator Hunter Hughes.[5] While the parties made some progress during their first mediation, the session did not result in a settlement. After continued litigation and motion practice, the parties attended a second mediation with Judge Gold[6] nearly a year later, on May 16, 2024. During follow-up negotiations, the parties reached an agreement in principle to resolve this matter. The parties filed a notice of settlement on June 14, 2024. Doc. 210.

### III. The settlement provides for a non-reversionary common fund for the benefit of Settlement Class Members that should ultimately exceed $30 million.

The Agreement defines a Settlement Class under Rule 23(b)(3) comprised of:

> All persons and entities throughout the United States (1) to whom Citibank, N.A. placed a call in connection with a past-due credit card account, (2) directed to a number assigned to a cellular telephone service, but not assigned to a current or former Citibank, N.A. customer or authorized user, (3) via its Aspect dialer and with an artificial or prerecorded voice, (4) from August 15, 2014 through July 31, 2024.

Participating Settlement Class Members who received one or more prerecorded voice calls from Citibank between August 15, 2014 and July 31, 2024, concerning a past-due credit card account and who never were Citibank accountholders or authorized users will receive a *pro-rata* share of the settlement fund, after attorneys' fees, costs, expenses, and service awards are deducted. While the exact per-claimant recovery will not be known until Settlement Class Members are provided with an opportunity to submit claims, each participating Settlement Class Member could possibly receive between $350 and $850. In exchange, Settlement Class Members will release their claims arising out of calls Citibank placed to their cellular telephones during the class period.

In the unlikely event that *pro rata* payments would exceed $2,500, participating Settlement Class Members would be entitled to recover in excess of $2,500 if they provide documentary evidence demonstrating that they received more than five prerecorded calls from Citibank. In such circumstances, participating Settlement Class

---

[5]   *See* https://hunteradr.com/cv.html (last visited July 30, 2024).

[6]   *See* https://www.jamsadr.com/gold/ (last visited July 30, 2024).

4

Members who provide such documentary evidence would receive additional compensation in the form of a *pro rata* portion of the remaining funds after all participating Settlement Class Members receive $2,500 each.

Subject to this Court's approval, an award of attorneys' fees and expenses, and service awards for Ms. Head and Mr. Newton, also will be deducted from the common fund. To that end, Class Counsel will seek one-third of the settlement fund in attorneys' fees,[7] as well as the reimbursement of litigation costs and expenses not to exceed $60,000. Ms. Head will seek a service award of $15,000 in recognition for her tremendous efforts in prosecuting this case for nearly six years, including, among all else, responding to written discovery requests, sitting for deposition, and routinely conferring with counsel. Mr. Newton, who has prosecuted his class action against Citibank for more than two years and who has responded to written discovery, will seek a service award of $10,000.

Of note, Citibank has not agreed to Class Counsel's request for an award of attorneys' fees, costs, and expenses. There is no "clear sailing" provision here. As such, Citibank is free to oppose these requests. Moreover, this Court's approval of the requested service awards, attorneys' fees, or litigation costs and expenses is not a condition of the settlement.

The Agreement also requires a robust notice program in line with this Court's previous approval of class notice, *see* Doc. 199, including direct mail notice to each potential Settlement Class Member who can be identified through Plaintiffs' reverse look-up process and Citibank's records, publication notice, and the creation of a dedicated settlement website and toll-free telephone number, through which Settlement

---

[7] *See, e.g.*, *Brown v. DirecTV*, No. 2:13-cv-01170-DMG-E, Doc. 538 (C.D. Cal. Mach 3, 2023) (awarding fees of one-third of common fund in TCPA class action); *Vasquez v. Leprino Foods Co.*, No. 1:17-cv-00796-JLT-BAM, 2024 WL 557782, at *13 (E.D. Cal. Feb. 12, 2024) (granting preliminary approval to class action settlement where counsel requested attorneys' fees of 40% of the common fund); *Hageman v. AT&T Mobility LLC*, No. CV 13-50-BLG-RWA, 2015 WL 9855925, at *4 (D. Mont. Feb. 11, 2015) (awarding fees of 33% of common fund in TCPA class action settlement).

5

Class Members can submit claims and obtain more information about this case and settlement.

## Argument

**I. This Court should conditionally certify the Settlement Class.**

This Court previously certified this matter as a class action and, in so doing, appointed Ms. Head as the class representative and her counsel—Michael Greenwald of Greenwald Davidson Radbil PLLC ("GDR") and Matthew Wilson of Meyer Wilson Co., LPA—as Class Counsel. Doc. 148 at 17-18.[8] The only difference between the class this Court certified for litigation purposes and the Settlement Class is an extension of the class period through July 31, 2024.

More specifically, (1) the proposed Settlement Class is so numerous that joinder of all members is impracticable, as the parties will send direct mail notice to several hundred thousand potential members of the Settlement Class; (2) Settlement Class Members share questions of law and fact in common with one another and with Plaintiffs; (3) Plaintiffs' claims are typical of Settlement Class Members' claims; (4) Plaintiffs have, and will continue to, fairly and adequately protect the interests of the Settlement Class; (5) questions of law and fact common to the members of the Settlement Class predominate over any questions affecting only individual members; and (6) a class action is superior to other available methods for the fair and efficient adjudication of the controversy. *See* Docs. 120, 138, 148.

Thus, and in light of this Court's previous findings, *see* Doc. 148, Plaintiffs respectfully submit that this Court should conditionally certify the Settlement Class for settlement purposes.

---

[8] The Ninth Circuit denied Citibank's petition for permission to appeal this Court's certification order pursuant to Rule 23(f). Doc. 153.

6

**II.   This Court should preliminarily approve the settlement as fair, reasonable, and adequate under Rule 23(e).**

Rule 23(e) requires that this Court make a preliminary determination of the settlement's fairness. "In evaluating a proposed settlement at the preliminary approval stage, some district courts . . . have stated that the relevant inquiry is whether the settlement 'falls within the range of possible approval' or 'within the range of reasonableness.'" *Bykov v. DC Trans. Servs., Inc.*, No. 2:18-cv-1692 DB, 2019 WL 1430984, at *2 (E.D. Cal. Mar. 29, 2019). That is, "preliminary approval of a settlement has both a procedural and a substantive component." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007).

As to the procedural component, although the presence of arm's-length negotiation does not create a *presumption* of fairness, *see Saucillo v. Peck*, 25 F.4th 1118, 1132 (9th Cir. 2022), "such negotiations can weigh in favor of approval." *Cmty. Res. For Indep. Living v. Mobility Works of Cal.*, 533 F. Supp. 3d 881, 888 (N.D. Cal. 2020). *See also Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution."). Likewise, "participation in mediation tends to support the conclusion that the settlement process was not collusive." *Ogbuehi v. Comcast of Cal./Colo./Fla./Or., Inc.*, 303 F.R.D. 337, 350 (E.D. Cal. 2014).

With respect to the substantive component, "[a]t this preliminary approval stage, the court need only 'determine whether the proposed settlement is within the range of possible approval.'" *Murillo v. Pacific Gas & Elec. Co.*, 266 F.R.D. 468, 479 (E.D. Cal. 2010) (quoting *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982)).

In sum, "at the preliminary approval stage, courts need only evaluate 'whether the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiency, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval.'" *Gonzalez v. Germain Law Office*, No. 15-CV-01427-PHX-ROS, 2016 WL

7

3360700, at *4 (D. Ariz. June 1, 2016) (Silver, J.) (preliminarily approving class action settlement) (quoting *Horton v. USAA Cas. Ins. Co.*, 266 F.R.D. 360, 363 (D. Ariz. 2009)).[9]

So, while a complete fairness evaluation is unnecessary at this juncture, Plaintiffs and their counsel strongly believe that the resolution reached here is in the best interests of the Settlement Class.

The Ninth Circuit has identified eight factors to consider in analyzing the fairness, reasonableness, and adequacy of a class settlement: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). Rule 23(e) likewise requires a court to consider several additional factors, including that the class representative and class counsel have adequately represented the class, and that the settlement treats class members equitably relative to one another. Fed. R. Civ. P. 23(e).

In applying these factors, this Court should be guided foremost by the general principle that settlements of class actions are favored. *See Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1229 (9th Cir. 1989) ("It hardly seems necessary to point out that there is an overriding public interest in settling and quieting litigation. This is particularly true in

---

[9] An "obvious deficiency" to a class action settlement can include one or more of the *Bluetooth* factors: (1) when counsel receives a disproportionate distribution of the settlement or where the class receives no monetary distribution; (2) when the parties negotiate a clear-sailing agreement, under which the defendant agrees not to challenge a request for an agreed-upon attorney's fee; and (3) when the agreement contains a kicker or reverter clause that returns unawarded fees to the defendant, rather than the class. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011). As noted, none of these deficiencies is present here. Moreover, this Court has already certified the class after conducting a rigorous analysis.

class action suits"). Here, the relevant factors support the conclusion that the negotiated settlement is fundamentally fair, reasonable, and adequate, and should be preliminarily approved.

### A. The strengths of Plaintiffs' case and the risks inherent in continued litigation against Citibank, and maintaining class certification, favor preliminary approval.

The first, second, and third *Hanlon* factors support preliminary approval. Of course, every class action involves some level of uncertainty, both on the merits and on the appropriateness of certification. This case is no different, as there was no guarantee that Plaintiffs would maintain certification of the class through trial or that this Court, or the trier of fact, would find in Plaintiffs' favor as to liability.

While Plaintiffs strongly believe in their claims, Citibank vigorously disputes that it violated the TCPA. Moreover, this case unfolded during a time of particular flux regarding the TCPA, with divergent opinions being issued from district courts on an ongoing basis.

Against that backdrop, Citibank raised a host of defenses, both on the merits and to the maintenance of class certification, including:

- Citibank expressed an intention to move for summary judgment on Plaintiffs' claims, asserting, among other things, that it could reasonably rely on consent provided by its customers to call the telephone numbers at issue;

- Citibank contended that the platform it utilized to make calls was not an automatic telephone dialing system and, as a result, Plaintiffs' only viable claims—if any—involved calls placed with an artificial or prerecorded voice;

- Citibank also contended that it maintains robust safeguards to ensure compliance with the TCPA, which would not support increased statutory damages;

- Citibank stated it would move to decertify the class after the issuance of class notice, thus creating a risk that class certification would not be maintained through trial;

- Citibank insisted that the number of *bona fide* class members was small and that class-wide damages were lacking; and

9

- Even had Plaintiffs succeeded on the merits and prevailed on appeal, a reduction in statutory damages was possible. *See Wakefield v. ViSalus, Inc.*, 51 F.4th 1109, 1125 (9th Cir. 2022) (vacating "the district court's denial of the defendant's post-trial motion challenging the constitutionality of the statutory damages award [under the TCPA] to permit reassessment of that question guided by the applicable factors").

Thus, there can be little question that Plaintiffs faced real risks in prevailing on their claims and maintaining certification of the class through trial.

There is also no doubt that, absent settlement, the parties faced years of protracted litigation, including dueling summary judgment motions, additional discovery (*see* Docs. 203-204, 206-207), a decertification motion, trial, and appeals. Considering that this case has already been pending for nearly six years, the risk, expense, complexity, and likely duration of further litigation also supports preliminary approval.

### B. The immediate, meaningful cash relief afforded by the settlement favors preliminary approval.

For this same reason, the fourth *Hanlon* factor—the amount offered in the settlement—also favors preliminary approval. To reiterate, Citibank will pay $29.5 million into a settlement fund to resolve this matter—an amount that is significant in its own right. There is no coupon component to this all-cash settlement, and no funds will revert to Citibank. Moreover, the fund will be invested in FDIC-insured, interest-bearing accounts, assuring that over $30 million will be available by the time the fund is distributed.

The $29.5 million fund compares favorably to other recoveries in wrong-number TCPA class actions. *See, e.g.*, *Picchi v. World Fin. Network Bank*, No. 11-CV-61797-CIV-Altonaga/O'Sullivan (S.D. Fla. Jan. 30, 2015) (approving wrong-number TCPA class action for $2.63 per person, settling claims of 3 million class members for $7.9 million); *see also, e.g.*, *Wesley v. Snap Fin. LLC*, No. 2:20-cv-00148-RJS-JCB, 2023 WL 1812670 (D. Utah Feb. 7, 2023) ($5 million, which amounted to $77.10 per potentially affected telephone number); *Miles v. Medicredit, Inc.*, No. 4:20-cv-1186-JAR, 2023 WL

1794559 (E.D. Mo. Feb. 7, 2023) ($6.42 per potentially affected telephone number); *Lucas v. Synchrony Bank*, No. 4:21-cv-70-PPS, ECF No. 47 (N.D. Ind. Nov. 18, 2022) (approximately $13 per potentially affected telephone number); *Williams v. Bluestem Brands, Inc.*, No. 8:17-cv-1971-T-27AAS, 2019 WL 1450090, at *2 (M.D. Fla. Apr. 2, 2019) (preliminary approval of wrong-number TCPA settlement amounting to $1.269 million, or approximately $7 per class member); *James v. JPMorgan Chase Bank, N.A.*, No. 8:15-cv-2424-T-23JSS, 2016 WL 6908118, at *1 (M.D. Fla. Nov. 22, 2016) (preliminary approval of wrong-number TCPA settlement for $5.55 per person); *Johnson v. Navient Sols., Inc.*, No. 1:15-cv-0716-LJM (S.D. Ind.) (approximately $46 per class member).

      Indeed, the settlement provides immediate cash relief to the Settlement Class. After deducting the requested attorneys' fees, litigation costs and expenses, and service awards, Class Counsel estimate that participating Settlement Class Members could receive between $350 and $850 each, an amount higher than other Court-approved TCPA settlements. *See James*, 2016 WL 6908118, at *2 ("Discounting the statutory award by the probability that Chase successfully defends some class members' claims, a recovery of $50 per person fairly resolves this action.") (citing *In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 789 (N.D. Ill. 2015) (finding that $34.60 per person falls "within the range of recoveries" in a TCPA class action)). *See also Rose v. Bank of Am. Corp.*, Nos. 11-2390, 12-4009, 2014 WL 4273358, at *10 (N.D. Cal. Aug. 29, 2014) (claimants received between $20 and $40 each); *Steinfeld v. Discover Fin. Servs.*, No. 12-1118, 2014 WL 1309352, at *7 (N.D. Cal. Mar. 31, 2014) (approving a settlement that distributed less than $50 per claimant, *see* ECF No. 101); *Arthur v. Sallie Mae, Inc.*, No. 10-CV198-JLR, 2012 WL 4075238 (W.D. Wash. Sept. 17, 2012) ($20-$40 per participating class member); *Adams v. Allianceone Receivables Mgmt.*,

*Inc.*, No. 3:08-cv-00248-JAH-WVG, ECF No. 113 (S.D. Cal. Apr. 23, 2012) (approximately $1.48 per class member).[10]

In sum, the settlement here constitutes an objectively reasonable result for the Settlement Class. *See Markos v. Wells Fargo Bank, N.A.*, No. 1:15-cv-01156-LMM, 2017 WL 416425, at *4 (N.D. Ga. Jan. 30, 2017) (finding that the cash recovery of $24 per claimant in a TCPA class action is "an excellent result when compared to the issues Plaintiffs would face if they had to litigate the matter").

### C. The posture of this case and experience and views of counsel favor preliminary approval.

Next, the fifth and sixth *Hanlon* factors likewise support preliminary approval. After nearly six years of heavily contested litigation—which included written discovery, depositions, expert reports and discovery, and significant motion practice—the settlement here was achieved with a clear view as to the case's strengths and weaknesses.

Thus, both Class Counsel—who have substantial experience in litigating TCPA class actions[11]—and this Court are adequately informed to evaluate the fairness of the settlement. Moreover, Plaintiffs and Class Counsel—after investing tremendous resources over nearly six years, *see* Ex. B at ¶¶ 11-117—firmly believe that the settlement is fair, reasonable, and adequate, and in the best interests of the Settlement Class. *See Nat'l Rural Telecomms. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation. This is because parties

---

[10]   *See also Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 227-28 (N.D. Ill. 2016) ($34 million for more than 32 million class members); *Connor v. JPMorgan Chase Bank*, No. 10 CV1284, Doc. 113 (S.D. Cal. May 30, 2014) ($11.66 million for 2,684,518 class members); *In re Jiffy Lube Int'l, Inc.*, No. 11-02261, Doc. 97 (S.D. Cal.) (class members entitled to vouchers for services valued at $17.29 or a cash payment of $12.97); *Agne v. Papa John's Int'l*, No. 2:10-cv-01139, Doc. 389 (W.D. Wash.) ($50 recovery plus $13 merchandise per claimant).

[11]   *See* Greenwald Decl. at ¶¶ 11-41; Declaration of Matthew R. Wilson, attached as Exhibit B, at ¶¶ 2-10.

represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation.").

Further, the parties' arm's-length settlement negotiations through experienced counsel, and after attending mediation with Judge Gold, demonstrate the fairness of the settlement, and that the settlement is not a product of collusion. *See Rodriguez*, 563 F.3d at 965; *see also Bykov*, 2019 WL 1430984, at *5-6 ("participation in mediation tends to support the conclusion that the settlement process was not collusive"). As a result, Plaintiffs and Class Counsel submit that the substantial value of the recovery here reflects their confidence in the claims at issue. *See Schuchardt v. Law Office of Rory W. Clark*, 314 F.R.D. 673, 685 (N.D. Cal. 2016) ("Given Class Counsel's extensive experience in this field, and their assertion that the settlement is fair, adequate, and reasonable, this factor supports final approval of the Settlement Agreement.").[12]

### D.  The settlement treats Settlement Class Members equitably.

Finally, Rule 23(e)(2)(D) requires that this Court confirm that the settlement treats all class members equitably. The Advisory Committee's Note to Rule 23(e)(2)(D) advises that courts should consider "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e), advisory comm.'s note (2018).

Here, each Settlement Class Member will be treated equitably as each participating Settlement Class Member will receive an equal portion of the common fund after deducting attorneys' fees, costs, expenses, service awards to Ms. Head and Mr. Newton, and the costs of class notice and administration.

---

[12]  The two remaining *Hanlon* factors—the presence of a governmental participant and the reaction of the class members to the proposed settlement—cannot be addressed at this stage because class notice has not been issued. *Hanlon*, 150 F.3d at 1026. Plaintiffs will address the reaction of Settlement Class Members and any governmental entities in connection with their motion for final approval of the settlement.

If, but only if, participating Settlement Class Members stand to receive more than $2,500, then each claimant who wishes may submit documentary evidence of the number of prerecorded calls they received from Citibank. In that instance, those Settlement Class Members who do so will receive a *pro rata* portion of the remaining funds available after each participating Settlement Class Member receives $2,500. Thus, the allocation of the settlement proceeds treats Settlement Class Members fairly and equitably.

Moreover, the release affects each Settlement Class Member in the same way. As such, this factor also supports preliminary approval.

## III. This Court should approve the parties' proposed notice program.

Pursuant to Rule 23(e), upon preliminary approval, this Court must "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. Such notice must be the "best notice practicable," *see* Fed. R. Civ. P. 23(c)(2)(B), which means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).

Here, the parties have agreed to a robust notice program to be administered by a well-respected third-party class administrator—Verita Global ("Verita"), formerly known as KCC Class Action Services, LLC—which will use all reasonable efforts to provide direct mail notice to each potential Settlement Class Member. Notice efforts will be led by Carla Peak, who, as this Court previously noted, is an expert in class action notice. Doc. 148 at 17 ("Thus, the Court holds Head has adequately demonstrated the reliability and relevance of Peak's expert opinion regarding notice to possible Rule 23(b)(3) class members.").

Consistent with Ms. Peak's previous work and testimony in this case, *see* Doc. 120-8, Verita will perform reverse look-ups of cellular telephone numbers identified by Citibank as potential wrong or reassigned numbers to locate associated names and addresses. Citibank will then cross-reference these names and addresses with its records to remove any known customers or accountholders who, by definition, are not Settlement Class Members. Addresses of potential Settlement Class Members will be updated

14

through the National Change of Address system, which updates addresses for all people who moved during the previous four years and filed a change of address with the U.S. Postal Service. Each person identified through this process will be sent, via U.S. mail, a postcard notice with a detachable claim form in the form attached to the Agreement as Exhibit 1. To submit a valid claim, Settlement Class Members must aver that they received prerecorded calls from Citibank on their cellular telephones during the class period and that they were not Citibank accountholders, customers, or authorized users.

Separately, Verita will establish a dedicated settlement website (www.HeadTCPAsettlement.com) through which Settlement Class Members can review relevant documents filed with this Court, review the question-and-answer notice (attached as Exhibit 1 to the Agreement), and submit claims.

In addition, Verita will establish a toll-free phone number, through which Settlement Class Members can request additional information and have questions about the settlement answered.

Plaintiffs have strived to make it as convenient as possible for Settlement Class Members to learn of and participate in the settlement. *See Bonoan v. Adobe, Inc.*, No. 3:19-cv-01068-RS, 2020 WL 6018934, at *2 (N.D. Cal. Oct. 9, 2020) (preliminarily approving TCPA class action settlement, approving materially identical notice plan, and noting that "KCC will utilize established third-party vendors to obtain contact information for potential class members in a manner consistent with industry standard in wrong number TCPA class actions."); *see also Knapper v. Cox Commc'ns, Inc.*, No. 2:17-cv-00913-SPL, Doc. 120 (D. Ariz. Jul. 12, 2019) (Logan, J.) (approving the use of reverse look-ups, publication notice, and the form and substance of materially similar postcard notice, postcard claim form, and question and answer notice, and finding that the proposed form and method for notifying settlement class members of the settlement met the requirements of Rule 23(c)(2)(B) and due process, constituted the best notice practicable under the circumstances, and constituted due and sufficient notice to all persons and entities entitled to the notice).

The plan complies with Rule 23 and due process because, among other things, it informs Settlement Class Members, directly, of: (1) the nature of this action; (2) the essential terms of the settlement, including the class definition and claims asserted; (3) the binding effect of a judgment if the Settlement Class Member does not request exclusion; (4) the process for objection or exclusion, including the time and method for objecting or requesting exclusion, and that Settlement Class Members may make an appearance through counsel; (5) information regarding Plaintiffs' proposed service awards and Class Counsel's request for an award of attorneys' fees and reimbursement of litigation costs and expenses; (6) the procedure for submitting claims to receive settlement benefits; and (7) how to make inquiries, and where to find additional information. Fed. R. Civ. P. 23(c)(2)(B).

In short, because this notice plan ensures that Settlement Class Members' due process rights are amply protected, this Court should approve it. *See Spencer v. #1 A LifeSafer of Ariz., LLC*, No. CV-18-02225-PHX-BSB, 2019 WL 1034451, at *3 (D. Ariz. Mar. 4, 2019) (Bade, J.) (preliminarily approving class action settlement and finding "that the proposed notice program is clearly designed to advise the Class Members of their rights.").

**IV.    This Court should schedule a final fairness hearing.**

Lastly, the final step in the settlement approval process is a final fairness hearing at which this Court may hear all evidence and argument necessary to make its final settlement evaluation. Fed. R. Civ. P. 23(e)(2). This Court will determine at or after the final fairness hearing whether the settlement should be approved, and whether to enter a judgment and order of dismissal under Rule 23(e). Plaintiffs respectfully request that this Court set a date for a hearing on final approval, at the Court's convenience, approximately five months after the Court's preliminary approval of the settlement.

**Conclusion**

Plaintiffs respectfully request that this Court enter the accompanying agreed order granting preliminary approval to the class action settlement, conditionally certifying the

Settlement Class, appointing Plaintiffs as class representatives, and confirming its appointment of GDR and Meyer Wilson as Class Counsel. Citibank does not oppose this relief.

Dated: July 31, 2024　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　*/s/ Michael L. Greenwald*
　　　　　　　　　　　　　　　　　　Michael L. Greenwald
　　　　　　　　　　　　　　　　　　Greenwald Davidson Radbil PLLC

　　　　　　　　　　　　　　　　　　*/s/ Matthew R. Wilson*
　　　　　　　　　　　　　　　　　　Matthew R. Wilson
　　　　　　　　　　　　　　　　　　Meyer Wilson Co., LPA

　　　　　　　　　　　　　　　　　　Class Counsel